Filed 8/16/12

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S190647 |
| v. | ) | |
| | ) | Ct.App. 2/4 |
| RODRIGO CABALLERO, | ) | B217709/B221833 |
| | ) | |
| Defendant and Appellant. | ) | |
| _____ | ) | |
| | ) | Los Angeles County |
| In re RODRIGO CABALLERO, | ) | Super. Ct. No. MA043902 |
| | ) | |
| on Habeas Corpus | ) | |
| _____ | ) | |

In *Graham v. Florida* (2010) 560 U.S. ___ [130 S.Ct. 2011] (*Graham*), the high court held that the Eighth Amendment prohibits states from sentencing a juvenile convicted of nonhomicide offenses to life imprisonment without the possibility of parole. (*Id.* at p. ___ [130 S.Ct. at p. 2030].)[1] We must determine here whether a 110-year-to-life sentence imposed on a juvenile convicted of nonhomicide offenses contravenes *Graham*'s mandate against cruel and unusual punishment under the Eighth Amendment. We conclude it does.

---

[1] The Eighth Amendment applies to the states. (*Robinson v. California* (1962) 370 U.S. 660.)

## FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of June 6, 2007, 16-year-old defendant, Rodrigo Caballero, opened fire on three teenage boys who were members of a rival gang. Adrian Bautista, Carlos Vargas, and Vincent Valle, members of the Val Verde Park Gang, were rounding a street corner on foot when defendant jumped out of a green Toyota and yelled out the name of his gang, either "Vario Lancas" or "Lancas." Vargas responded by shouting "Val Verde." Defendant began shooting at the group. Neither Vargas nor Valle were hit by the gunfire; Bautista was hit in the upper back, near his shoulder blade.

A jury convicted defendant of three counts of attempted murder (Pen. Code, §§ 664, 187, subd. (a)).[2] The jury found true that defendant personally and intentionally discharged a firearm (§ 12022.53, subds. (c)-(d)) and inflicted great bodily harm on one victim (§ 12022.7), and that defendant committed the crimes for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)). Defendant, a diagnosed schizophrenic, testified in his own behalf after he was treated with antipsychotic medication. He told the jury both that he "was straight trying to kill somebody" and that he did not intend to kill anyone. The trial court sentenced defendant to 15 years to life for the first attempted murder count, plus a consecutive 25 years to life for the firearm enhancement. (§ 12022.53, subd. (d).) For the second attempted murder, the court imposed an additional consecutive term of 15 years to life, plus 20 years for the firearm enhancement on that count. (§ 12022.53, subd. (c).) On the third attempted murder count, the court sentenced defendant to another consecutive term of 15 years to life, plus 20 years for the corresponding firearm enhancement. (§ 12022.53, subd. (c)). Defendant's total

---

[2] All statutory references are to the Penal Code unless otherwise indicated.

sentence was 110 years to life. The Court of Appeal affirmed the trial court's judgment in its entirety.

We granted defendant's petition for review to determine whether *Graham* prohibits imposition of the sentence here.

**DISCUSSION**

In *Graham*, the 16-year-old defendant, Terrance Graham, committed armed burglary and attempted armed robbery, was sentenced to probation, and subsequently violated the terms of his probation when he committed other crimes. (*Graham*, *supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2020].) The trial court revoked his probation and sentenced him to life in prison for the burglary. (*Ibid.*) Graham's sentence amounted to a life sentence without the possibility of parole because Florida had abolished its parole system, leaving Graham with no possibility of release unless he was granted executive clemency. (*Id.* at p. ___ [130 S.Ct. at p. 2015].)

The high court stated that nonhomicide crimes differ from homicide crimes in a "moral sense" and that a juvenile nonhomicide offender has a "twice diminished moral culpability" as opposed to an adult convicted of murder — both because of his crime and because of his undeveloped moral sense. (*Graham*, *supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2027].) The court relied on studies showing that "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. For example, parts of the brain involved in behavior control continue to mature through late adolescence. [Citations.] Juveniles are [also] more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved character' than are the actions of adults." (*Id.* at p. ___ [130 S.Ct. at p. 2026], quoting *Roper v. Simmons* (2005) 543 U.S. 551, 570.) No legitimate penological

3

interest, the court concluded, justifies a life without parole sentence for juvenile nonhomicide offenders.  (*Id.* at p. ___ [130 S.Ct. at p. 2030].)

Although the state is by no means required to guarantee eventual freedom to a juvenile convicted of a nonhomicide offense, *Graham* holds that the Eighth Amendment requires the state to afford the juvenile offender a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," and that "[a] life without parole sentence improperly denies the juvenile offender a chance to demonstrate growth and maturity."  (*Graham*, *supra*, 560 U.S. at p. ___ [130 S.Ct. at pp. 2029-2030].)  The court observed that a life without parole sentence is particularly harsh for a juvenile offender who "will on average serve more years and a greater percentage of his life in prison than an adult offender."  (*Id*. at p. ___ [130 S.Ct. at p. 2028].)  *Graham* likened a life without parole sentence for nonhomicide offenders to the death penalty itself, given their youth and the prospect that, as the years progress, juveniles can reform their deficiencies and become contributing members of society.  (*Ibid.*)

The People assert that *Graham*'s ban on life without parole sentences does not apply to juvenile offenders who commit attempted murder, with its requisite intent to kill.  The People also claim that a cumulative sentence for distinct crimes does not present a cognizable Eighth Amendment claim, concluding that each of defendant's sentences was permissible individually because each included the possibility of parole within his lifetime.[3]  In addition, the Court of Appeal

---

[3]     The People also rely on *Lockyer v. Andrade* (2003) 538 U.S. 63 for the proposition that a juvenile offender may receive consecutive mandatory terms exceeding his or her life expectancy without implicating the prohibition against cruel and unusual punishment.  In our view, no such conclusion may be drawn.  In fact, in *Lockyer* the high court noted that it has never provided specific guidance "in determining whether a particular sentence for a term of years can violate the Eighth Amendment," observing that it had "not established a clear or consistent path for courts to follow."  (*Id*. at p. 72.)  We note that the term "life expectancy"

4

reasoned that *Graham* applied a categorical rule specifically limited to juvenile nonhomicide offenders receiving an explicitly designated life without parole sentence: "[I]f [*Graham*] had intended to broaden the class of offenders within the scope of its decision, it would have [included] . . . any juvenile offender who received the functional equivalent of a life sentence without the possibility of parole for a nonhomicide offense." The Court of Appeal found support for its conclusion in Justice Alito's dissent from *Graham*: "nothing in the Court's opinion affects the imposition of a sentence to a term of years without the possibility of parole." (*Graham*, *supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2058] (dis. opn. of Alito, J.).) *Graham*'s scope and application, however, were recently clarified in *Miller v. Alabama* (2012) 567 U.S. ___ [132 S.Ct. 2455] (*Miller*).)

In *Miller*, the United States Supreme Court extended *Graham*'s reasoning (but not its categorical ban) to homicide cases, and, in so doing, made it clear that *Graham*'s "flat ban" on life without parole sentences for juvenile offenders in nonhomicide cases applies to their sentencing equation regardless of intent in the crime's commission, or how a sentencing court structures the life without parole sentence. (*Miller*, *supra*, 567 U.S. ___ [132 S.Ct. at pp. 2465, 2469].) The high court was careful to emphasize that *Graham*'s "categorical bar" on life without parole applied "only to nonhomicide crimes." (*Id.* at p. ___ [132 S.Ct. at p.2465].) But the court also observed that "none of what [*Graham*] said about children — about their distinctive (and transitory) mental traits and environmental vulnerabilities — is crime-specific. Those features are evident in the same way, and to the same degree, when . . . a botched robbery turns into a killing. So *Graham*'s reasoning implicates any life-without-parole sentence imposed on a

means the normal life expectancy of a healthy person of defendant's age and gender living in the United States.

5

juvenile, even as its categorical bar relates only to nonhomicide offenses." (*Miller*, *supra*, 567 U.S. ___ [132 S.Ct. at p. 2465].) *Miller* therefore made it clear that *Graham*'s "flat ban" on life without parole sentences applies to all nonhomicide cases involving juvenile offenders, including the term-of-years sentence that amounts to the functional equivalent of a life without parole sentence imposed in this case.[4]

Defendant in the present matter will become parole eligible over 100 years from now. (§ 3046, subd. (b) [requiring defendant serve a minimum of 110 years before becoming parole eligible].) Consequently, he would have no opportunity to "demonstrate growth and maturity" to try to secure his release, in contravention of *Graham*'s dictate. (*Graham*, *supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2029]; see *People v. Mendez* (2010) 188 Cal.App.4th 47, 50-51 [holding that a sentence of 84 years to life was the equivalent of life without parole under *Graham*, and therefore cruel and unusual punishment].) *Graham*'s analysis does not focus on the precise sentence meted out. Instead, as noted above, it holds that a state must provide a

---

4 Although *Miller* concluded that *Graham*'s categorical ban on life without parole sentences applies only to all nonhomicide offenses, the court emphasized that in homicide cases, states are forbidden from imposing a "[m]andatory life without parole for a juvenile." (*Miller*, *supra*, 567 U.S. ___ [132 S.Ct. at p. 2464].) The high court noted that such mandatory sentences preclude consideration of juveniles' chronological age and its hallmark features — among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surround them — no matter how brutal or dysfunctional. (*Ibid.*) Thus, in *Miller* the high court did "not foreclose a sentencer's ability" to determine whether it was dealing with homicide cases and the " 'rare juvenile offender whose crime reflects irreparable corruption.' " (*Id.* at p. 2469, quoting *Roper*, *supra*, 543 U.S. at p. 573; *Graham*, *supra*, 560 U.S. ___ [130 S.Ct. at p. 2026].) The court requires sentencers in homicide cases "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." (*Miller*, *supra*, 567 U.S. ___ [132 S.Ct. at p. 2469].) We leave *Miller*'s application in the homicide context to a case that poses the issue.

6

juvenile offender "with some realistic opportunity to obtain release" from prison during his or her expected lifetime. (*Graham*, *supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2034].)

**CONCLUSION**

Consistent with the high court's holding in *Graham*, *supra*, 560 U.S. ___ [130 S.Ct. 2011], we conclude that sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment. Although proper authorities may later determine that youths should remain incarcerated for their natural lives, the state may not deprive them at sentencing of a meaningful opportunity to demonstrate their rehabilitation and fitness to reenter society in the future. Under *Graham*'s nonhomicide ruling, the sentencing court must consider all mitigating circumstances attendant in the juvenile's crime and life, including but not limited to his or her chronological age at the time of the crime, whether the juvenile offender was a direct perpetrator or an aider and abettor, and his or her physical and mental development, so that it can impose a time when the juvenile offender will be able to seek parole from the parole board. The Board of Parole Hearings will then determine whether the juvenile offender must be released from prison "based on demonstrated maturity and rehabilitation." (*Id.* at p. ___ [130 S.Ct. at p. 2030].) Defendants who were sentenced for crimes they committed as juveniles who seek to modify life without parole or equivalent defacto sentences already imposed may file petitions for a writ of habeas corpus in the trial court in order to allow the court to weigh the mitigating evidence in determining the extent of incarceration required before parole hearings. Because every case will be different, we will not provide trial courts with a precise time frame for setting these future parole hearings in a nonhomicide case. However, the sentence must

7

not violate the defendant's Eighth Amendment rights and must provide him or her a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" under *Graham*'s mandate.

We reverse the judgment of the Court of Appeal and remand the matter for reconsideration in light of this opinion.[5]

**CHIN**, **J.**

**WE CONCUR:**

**CANTIL-SAKAUYE**, **C. J.**
**KENNARD**, **J.**
**BAXTER**, **J.**
**CORRIGAN**, **J.**

---

[5]    We urge the Legislature to enact legislation establishing a parole eligibility mechanism that provides a defendant serving a de facto life sentence without possibility of parole for nonhomicide crimes that he or she committed as a juvenile with the opportunity to obtain release on a showing of rehabilitation and maturity.

8

**CONCURRING OPINION BY WERDEGAR, J.**


As the majority recognizes, the United States Supreme Court held in *Graham v. Florida* (2010) 560 U.S. ___, ___ [130 S.Ct. 2011, 2034] (*Graham*) that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." Consequently, I concur in the majority's holding that, consistent with *Graham,* "sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment." (Maj. opn., *ante*, at p. 7.) In so holding, however, we are extending the high court's jurisprudence to a situation that court has not had occasion to address.

Recently, the United States Supreme Court addressed a different aspect of this issue: juvenile offenders who commit *homicide* offenses. (*Miller v. Alabama* (2012) 567 U.S. ___ [132 S.Ct. 2455] (*Miller*).) *Miller* concluded that even for juvenile homicide offenders, a *mandatory* sentence of life imprisonment without the possibility of parole violates the proportionality requirement of the Eighth Amendment to the United States Constitution because it requires "that all children

1

convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes . . . ." (*Miller*, 567 U.S. at p. ___ [132 S.Ct. at p. 2475].) For homicide offenses, then, *Miller* eschewed the "categorical bar" on life without parole sentences imposed in *Graham* (*Miller*, 567 U.S. at p. ___ [132 S.Ct. at p. 2465]), and instead left open the possibility that juvenile murderers could, in a sentencing court's discretion, be sentenced to spend the rest of their lives in prison with no hope of parole (short of a grant of executive clemency).

Defendant Rodrigo Caballero was 16 years old, and thus a juvenile, when he committed his crimes. In light of *Miller*, we must first decide whether he committed a homicide or a nonhomicide offense. The jury convicted defendant of three counts of attempted premeditated and deliberate murder. (Pen. Code, § 664, subd. (a).) Two of his victims escaped physical injury completely, while one was injured but survived the shooting. As *Graham* explains, such "[s]erious nonhomicide crimes 'may be devastating in their harm . . . but "in terms of moral depravity and of the injury to the person and to the public," . . . they cannot be compared to murder in their "severity and irrevocability." ' [Citing *Kennedy v. Louisiana* (2008) 554 U.S. 407, 438.] This is because '[l]ife is over for the victim of the murderer,' but for the victim of even a very serious nonhomicide crime, 'life . . . is not over and normally is not beyond repair.' [Citing *Coker v. Georgia* (1977) 433 U.S. 584, 598 (plur. opn.).] Although an offense like robbery or rape is 'a serious crime deserving serious punishment,' [citation], those crimes differ from homicide crimes in a moral sense." (*Graham*, *supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2027].) Because the crime of attempted murder, even when premeditated and deliberate, does not rise to the severity or irrevocability of actually taking another's life, it must be classified as a nonhomicide offense within

2

the meaning of *Graham*.1  (See *Manuel v. State* (Fla. 2010) 48 So.3d 94, cert. den. *sub nom. Florida v. Manuel* (2011) ___ U.S. ___ [132 S.Ct. 446] [finding attempted murder a nonhomicide offense under *Graham*].)  Like the majority, therefore, I conclude this case falls within *Graham*'s categorical bar prohibiting life without parole sentences for juveniles who commit nonhomicide offenses.

Because *Graham* imposes a "flat ban" on such sentences (*Miller*, *supra*, 567 U.S. at p. ___ [132 S.Ct. at p. 2465]), we must next determine whether defendant's sentence of 110 years to life is the legal equivalent of life without parole.  Although respondent appears to concede that defendant's sentence is the

---

1  *Graham* itself is not crystal clear on this point.  As respondent points out, *Graham* at one point says "[t]he Court has recognized that defendants who do not kill, *intend to kill, or foresee that life will be taken* are categorically less deserving of the most serious forms of punishment than are murderers." (*Graham*, *supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2027], italics added.)  Here, defendant's convictions for attempted murder necessarily demonstrate the jury found he acted with the intent to kill.  (*People v. Gonzalez* (2012) 54 Cal.4th 643, 653.)

*Graham* also relied heavily on a scholarly paper to conclude that "nationwide there are only 109 juvenile offenders serving sentences of life without parole for nonhomicide offenses" (*Graham*, *supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2023]), but that paper defined homicide crimes *to include attempted murder* (Annino et al., Juvenile Life Without Parole for Non-Homicide Offenses:  Florida Compared to Nation, Fla. St. U., Pub. Int. L. Center, Sept. 14, 2009, p. 4 [for purposes of the study, "[i]ndividuals convicted of attempted homicide . . . are defined as homicide offenders"]).  Finally, in recognizing the worldwide consensus against imprisoning juveniles for life with no chance of parole, *Graham* noted that only two countries—the United States and Israel—impose that sentence in practice, and that "all of the seven Israeli prisoners whom commentators have identified as serving life sentences for juvenile crimes were convicted of homicide *or attempted homicide*." (*Graham*, *supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2033], italics added.)

Despite these slight inconsistencies in *Graham*'s analysis, the main thrust of its reasoning is that crimes resulting in the death of another human being are qualitatively different from all others, both in their severity, moral depravity, and irrevocability, and the Eighth Amendment to the United States Constitution demands courts take cognizance of that fact when sentencing those who committed their crimes while still children.

3

functional equivalent of a life without parole term, they nevertheless argue his sentence is distinguishable from the sentence prohibited in *Graham* because it is comprised of component parts that only when added together constitute a term longer than a person can serve in a normal lifetime. For this purported distinction they cite comments from the *Graham* dissenters. (See *Graham*, *supra*, 560 U.S. at p. ___, fn. 11 [130 S.Ct. at p. 2052, fn. 11] (dis. opn. of Thomas, J.) [opining that the *Graham* majority "excludes from its analysis all juveniles sentenced to lengthy term-of-years sentences (*e.g.,* 70 or 80 years' imprisonment)"]; *id*. at p. ___ [130 S.Ct. at p. 2058] (dis. opn. of Alito, J.) ["Nothing in the Court's opinion affects the imposition of a sentence to a term of years without the possibility of parole."].)

Characterization by the *Graham* dissenters of the scope of the majority opinion is, of course, dubious authority (see *Glover v. Board of Retirement* (1989) 214 Cal.App.3d 1327, 1337 [the " 'majority opinion of the Supreme Court states the law and . . . a dissenting opinion has no function except to express the private view of the dissenter.' "]), but in any event the purported distinction between a single sentence of life without parole and one of component parts adding up to 110 years to life is unpersuasive. The gist of *Graham* is not only that life sentences for juveniles are *unusual* as a statistical matter, they are *cruel* as well because "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds" (*Graham*, *supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2026]), "[j]uveniles are more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved character' than are the actions of adults" (*ibid*.), and that accordingly, " 'a greater possibility exists that a minor's character deficiencies will be reformed' " (*id*. at pp. ___ [130 S.Ct. at pp. 2026-2027]).

Further, the high court in *Graham* noted that, "[w]ith respect to life without parole for juvenile nonhomicide offenders, none of the goals of penal sanctions

4

that have been recognized as legitimate—retribution, deterrence, incapacitation, and rehabilitation [citation]—provides an adequate justification." (*Graham*, *supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2028].)  First, although " '[t]he heart of the retribution rationale is that a criminal sentence must be directly related to the personal culpability of the criminal offender' " (*ibid*.), this concern applies equally whether the sentence is one of life without parole or a term of years that cannot be served within the offender's lifetime.  Second, society's interest in deterring socially unacceptable behavior by imposing long sentences does not justify sentences of life without parole for juvenile nonhomicide offenders "[b]ecause juveniles' 'lack of maturity and underdeveloped sense of responsibility . . . often result in impetuous and ill-considered actions and decisions,' [citation], [such that] they are less likely to take a possible punishment into consideration when making decisions." (*Id*. at pp. ___-___ [130 S.Ct. at pp. 2028-2029].)  Third, although lifetime incapacitation will admittedly prevent criminals from reoffending, imposing that severe punishment on juvenile nonhomicide offenders labels them as incorrigible and incapable of change, and thus denies to them "a chance to demonstrate growth and maturity." (*Id*. at p. ___ [130 S.Ct. at p. 2029.)  These concerns remain true whether the sentence is life without parole or a term of years exceeding the offender's life expectancy.

The fourth consideration mentioned by the *Graham* court—rehabilitation—is perhaps the most salient factor as applied to underage offenders.  As *Graham* explained:  "A sentence of life imprisonment without parole . . . cannot be justified by the goal of rehabilitation.  The penalty forswears altogether the rehabilitative ideal.  By denying the defendant the right to reenter the community, the State makes an irrevocable judgment about that person's value and place in society.  This judgment is not appropriate in light of a juvenile nonhomicide offender's capacity for change and limited moral culpability." (*Graham*, *supra*, 560 U.S. at

5

pp. ___-___ [130 S.Ct. at pp. 2029-2030].)  Like a sentence of life without parole, a prison sentence of such length that it cannot be served within an offender's lifetime similarly denies his or her "right to reenter the community" (*ibid*.), and so equally implicates *Graham*'s reasoning that concerns over rehabilitation cannot justify a lifetime of imprisonment for nonhomicide juvenile offenders.

Although the facts of this case differ from those in *Graham* in that defendant was not sentenced to a single term of life without parole, I agree with the majority that *Graham* applies.  Because defendant committed three nonhomicide crimes while still a juvenile and was sentenced to the functional equivalent of life in prison with no possibility of parole, he is entitled to the benefit of what *Miller* termed *Graham*'s "categorical bar" (*Miller*, *supra*, 567 U.S. at p. ___ [132 S.Ct. at p. 2465]) on sentences of life in prison with no "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" (*Graham*, *supra*, 560 U.S. at p. ___ [130 S.Ct. at p. 2030]).  I also agree that the Legislature is an appropriate body to establish a mechanism to implement *Graham*'s directives for the future (maj. opn., *ante*, at p. 9, fn. 5), and that "every case will be different" (*id*. at p. 7).  But irrespective of whether the Legislature, in the future, steps in to enact procedures under which juveniles in defendant's position may be resentenced, the trial court in this case must resentence defendant to a term that does not violate his rights.  (See *In re Hawthorne* (2005) 35 Cal.4th 40 [affording the defendant relief under *Atkins v. Virginia* (2002) 536 U.S. 304 when his case did not qualify for the preconviction proceedings set forth in Pen. Code, § 1376].)**2**  Accordingly, I would provide the lower court greater guidance on remand in this case, for we have before us a defendant on whom an unconstitutional sentence was pronounced.  That violation must be remedied.

---

**2**      Because the constitutionality of any new sentence may be challenged on appeal, this court may be called upon to provide further guidance.

*Graham* does not require defendant be given a parole hearing *sometime* in the future; it prohibits a court from sentencing him to such a term lacking that possibility *at the outset*. Therefore, I would remand the case to the trial court with directions to resentence defendant to a term that does not violate his constitutional rights, that is, a sentence that, although undoubtedly lengthy, provides him with a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (*Graham*, 560 U.S. at p. ___ [130 S.Ct. at p. 2030].)

With those caveats in mind, I concur in the majority's decision to reverse the judgment of the Court of Appeal.

**WERDEGAR, J.**

**I CONCUR:**

**LIU, J.**

7

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Caballero

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 191 Cal.App.4th 1248
**Rehearing Granted**

_____

**Opinion No.** S190647
**Date Filed:** August 16, 2012

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Hayden A. Zacky

_____

**Counsel:**

Kosnett & Durchfort and David E. Durchfort for Defendant and Appellant.

L. Richard Braucher, Susan L. Burrell, Corene Thaedra Kendrick and Jonathan Laba for Pacific Juvenile Defender Center as Amicus Curie on behalf of Defendant and Appellant.

Constance de la Vega, Kyra Millich; Jessica R. Feierman, Marsha Levick, Emily Keller, Joanna Visser; Maureen Pacheco; Elizabeth M. Calvin; Sheryl Gordon McCloud; Paula Pearlman and Shawna Parks for Juvenile Law Center, Human Rights Advocates, Human Rights Watch, Loyola Law School Center for Law and Policy, the National Association of Criminal Defense Attorneys and the Disability Rights Legal Center as Amici Curie on behalf of Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Chung L. Mar, Lauren E. Dana, Jaime L. Fuster and Lawrence M. Daniels, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

David E. Durchfort
Kosnett & Durchfort
11355 W. Olympic Blvd., Suite 300
Los Angeles, CA  90064
(310) 444-8898

Marsha Levick
Juvenile Law Center
1315 Walnut Street, 4th Floor
Philadelphia PA  19107
(215) 625-0551

Lawrence M. Daniels
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 897-2288