WERDEGAR, J.,
Concurring and Dissenting.—Defendant Tyris Lamar Franklin was sentenced to prison for a term of 50 years to life for his conviction of first degree murder using a firearm (Pen. Code, §§ 187, 12022.53),[1] committed when he was 16 years old. I agree with the majority that the question whether his sentence may be considered the equivalent of life in prison with no possibility of parole (LWOP), and thus subject to United States Constitution Eighth Amendment limits (Miller v. Alabama (2012) 567 U.S. 460 [183 L.Ed.2d 407, 132 S.Ct. 2455] (Miller)), is moot following the Legislature’s passage of legislation giving defendant the opportunity for a youth offender parole hearing after 25 years of incarceration.
I part company with the majority over its further conclusion that we must remand the case “for a determination of whether Franklin was afforded sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing.” (Maj. opn., ante, at p. 284.) Notably, the majority does not claim a remand for what might be termed a “baseline hearing” is constitutionally mandated by Miller, supra, 567 U.S. 460 [183 L.Ed.2d 407, 132 S.Ct. 2455]. Rather, the premise of the majority’s remand for a baseline hearing is statutory. No statute, of course, specifically authorizes such hearings. The majority, however, reasons that because the statutory scheme directs the Board of Parole Hearings (Board) to give “great weight to . . . any subsequent growth and increased maturity of the prisoner” (§ 4801, subd. (c)), the statutes “contemplate . . . information regarding the juvenile offender’s characteristics and circumstances at the time of the offense will be available” (maj. opn., ante, at p. 283).
The Legislature’s charge to the Board at future youth offender parole hearings is to give the individual “a meaningful opportunity to obtain release.” (§ 3051, subd. (e).) To this end, the Board “shall give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law.” (§ 4801, subd. (c), italics added.) Family members and others “with knowledge about the individual before the crime or his or her growth and maturity since the time of the crime may submit statements for review by the board.” (§ 3051, subd. (f)(2).) But to “contemplate” that such information may be taken into consideration is not to *288 mandate procedures to enable the offender at the time of sentence or, for those sentenced before enactment of the statute, years after judgment is final, to make a record of such information, including live testimony and the opportunity for cross-exantination, in effect a new sentence hearing. No “relevant case law” (§ 3051, subd. (e); § 4801, subd. (c)) so requires. Indeed, what case law establishes is that youth and immaturity differentiate juvenile offenders from adults and must be taken into account in connection with sentencing; youthful offenders should not be viewed as incorrigible, but subject to growth and maturity. (Miller, supra, 567 U.S. at pp. 472-473 [183 L.Ed.2d at pp. 419, 420, 132 S.Ct. at p. 2465] [a finding of incorrigibility is “ ‘ “inconsistent with youth” ’ ” and “at odds with a child’s capacity for change”]; Graham v. Florida (2010) 560 U.S. 48, 74 [176 L.Ed.2d 825, 130 S.Ct. 2011] [LWOP is incompatible with juvenile offender’s “capacity for change”].) Statutory authorization for the Board, in its discretion, to use “psychological evaluations and risk assessment instruments” administered by licensed psychologists (§ 3051, subd. (f)(1)) supports the conclusion the Legislature intended the Board’s focus to be on the prisoner’s current circumstances, his or her maturity and efforts at rehabilitation, irrespective of the particular factors that may have influenced him or her at the time of the offense. Such assessments and evaluations are viewed as informative of themselves without regard to any baseline of the individual offender.
In sum, I am unpersuaded a youthful offender will be deprived of a “meaningful opportunity to obtain release” (§ 3051, subd. (e)), or that the Board will be unable to fairly consider a youthful offender’s diminished culpability, later growth, or increased maturity (§ 4801, subd. (c)), unless we impose on the trial courts a new, judicially created, extrastatutory procedure entitling such offenders to a type of penalty phase trial, replete with opposing experts and family members and friends, subject to cross-examination, testifying to the offender’s youthful immaturity. The statutory scheme, in my view, does not bear the weight of the majority’s conclusion that such a hearing is required to effectuate its purpose of affording a youthful offender a meaningful opportunity to obtain release. Rather, in borrowing the “diminished culpability” of juveniles and the “hallmark features” of youth language from Miller, supra, 567 U.S. at pages 471 and 477 [183 L.Ed.2d at pp. 418 & 423, 132 S.Ct. at pp. 2464 & 2468], and inserting it in section 4801, subdivision (c), the Legislature signaled its agreement with the United States Supreme Court that those factors are inherent in juveniles and are generally deemed to mitigate the culpability of a juvenile who has committed a severe crime. The focus of the statutory scheme is the psychological growth and “increased maturity” of the youthful offender (§4801, subd. (c)), now an adult, as manifested by his or her behavior and efforts to rehabilitate himself or herself during his incarceration, as against his or her presumed immaturity at the time of the offense.
*289 Had the Legislature intended—or “contemplated,” as the majority fashions it—that a youthful offender at the time of his or her sentencing (or thereafter if sentence was imposed before enactment of the statute) would have the opportunity to make a record of his or her character and the influences and circumstances of the offense in order to provide a meaningful opportunity for future parole, it surely would have said so. Instead, it provided the offender the opportunity at the time of the hearing to submit, in the form of “statements” (§ 3051, subd. (f)(2)), such information as may be available, and provided the Board the option to consider the results of psychological testing {id., subd. (f)(1)). Absent more specific legislative authorization, I disagree with my colleagues that, in order to effectuate the Legislature’s purpose,[2] we must now remand the case to permit the trial court to determine whether defendant “was afforded an adequate opportunity to make a record of information that will be relevant [in a future parole hearing].” (Maj. opn., ante, at pp. 286-287.)
Unless we find the Legislature’s statutory response to Miller, supra, 567 U.S. 460 [183 L.Ed.2d 407, 132 S.Ct. 2455] failed to cure the potential Eighth Amendment problem associated with imposing an LWOP term (or its equivalent) on a juvenile offender, or that the current scheme would be absurd without providing youthful offenders with a baseline hearing (Ennabe v. Manosa (2014) 58 Cal.4th 697, 721 [168 Cal.Rptr.3d 440, 319 P.3d 201] [courts will not give statutes a literal meaning if doing so leads to absurd consequences]), we should not rewrite the statute to provide for such hearings. “ ‘[A]s this court has often recognized, the judicial role in a democratic society is fundamentally to interpret laws, not to write them. The latter power belongs primarily to the people and the political branches of government . . . .’ [Citation.] It cannot be too often repeated that due respect for the political branches of our government requires us to interpret the laws in accordance with the expressed intention of the Legislature. ‘This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.’ ” (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].)
*290 I have no doubt that affording youthful life prisoners the opportunity for a baseline hearing could well inure to their benefit in any future parole hearing. For that reason, we may now anticipate petitions for such hearings will be filed in numerous courts throughout California as juvenile life prisoners (and those youthful offenders who have been sentenced to the equivalent of LWOP) seek to take advantage of this court’s ruling. Indeed, holding periodic update hearings to evaluate a youthful offender’s progress towards parole suitability would also be beneficial. So, too, might it be for adult offenders. But this court is not authorized to create and require such procedures simply because they might be a good idea.
In short, judicial restraint counsels that we hesitate to create on our own initiative new procedural rules neither constitutionally nor legislatively required in the guise of implementing an unexpressed legislative intent. The Legislature is in the best position, as the Board begins to discharge its responsibilities under the new youth offender parole hearing statutes, to consider and implement any new evidentiary procedures that experience may suggest would be necessary or desirable.
Because I believe a failure to remand and give defendant the opportunity to present evidence in a baseline hearing would not render his sentence unconstitutional under Miller, supra, 567 U.S. 460 [183 L.Ed.2d 407, 132 S.Ct. 2455] or the Eighth Amendment, and because I see no evidence in the statutory scheme the Legislature intended to create such procedures, I respectfully dissent from that part of the majority’s decision remanding the case for a baseline hearing. The Legislature, of course, remains free to amend the pertinent statutes to specifically authorize such hearings.

 All further statutory references are to the Penal Code.

 The preface to the relevant legislation declared in pertinent part: “The purpose of this act is to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity, in accordance with the decision of the California Supreme Court in People v. Caballero (2012) 55 Cal.4th 262 [145 Cal.Rptr.3d 286, 282 P.3d 291] and the decisions of the United States Supreme Court in Graham v. Florida[, supra,] 560 U.S. 48, and Miller v. Alabama[, supra, 567 U.S. 460,] [183 L.Ed.2d 407, 132 S.Ct. 2455].” (Stats. 2013, ch. 312, § 1.) Further: “It is the intent of the Legislature to create a process by which growth and maturity of youthful offenders can be assessed and a meaningful opportunity for release established.” (Ibid.)