Filed 2/24/14

# IN THE SUPREME COURT OF CALIFORNIA

FAIEZ ENNABE, Individually and as )
Administrator, etc., et al., )
                                     )
        Plaintiffs and Appellants, )
                                     )                S189577
        v. )
                                     )      Ct.App. 2/1 B222784
CARLOS MANOSA et al., )
                                     )      Los Angeles County
        Defendants and Respondents. )   Super. Ct. No. KC053945
_____ )

Beginning in 1971 this court decided three cases that together reversed decades of previous law and recognized, for the first time, that sellers or furnishers of alcoholic beverages could be liable for injuries proximately caused by those who imbibed. (*Vesely v. Sager* (1971) 5 Cal.3d 153; *Bernhard v. Harrah's Club* (1976) 16 Cal.3d 313; *Coulter v. Superior Court* (1978) 21 Cal.3d 144.) In 1978, the Legislature abrogated the holdings of those cases, largely reinstating the prior common law rule that the consumption of alcohol, not the service of alcohol, is the proximate cause of any resulting injury. (Bus. & Prof. Code, § 25602, subd. (c); Civ. Code, § 1714, subd. (b).)[1] The Legislature's action in essence created civil immunity for sellers and furnishers of alcohol in most situations. The Legislature

---

[1]     All further statutory references are to the Business and Professions Code unless otherwise specified.

also enacted section 25602.1, which created some narrow exceptions to this broad immunity, and we find one such exception relevant to this case. In addition to permitting liability in some circumstances for the provision of alcohol (i.e., the sale, furnishing or giving away of alcoholic beverages) by those licensed to sell alcohol (or who are required to be licensed), section 25602.1 also states that "any other person" who sells alcoholic beverages (or causes them to be sold) to an obviously intoxicated minor loses his or her civil immunity and can be liable for resulting injuries or death. Liability of such "other person[s]" is limited to those who sell alcohol; civil immunity is still the rule for nonlicensees who merely furnish or give drinks away.

We consider in this case whether defendant Jessica Manosa[2] can be liable under the foregoing exception when, at her party, an underage, intoxicated guest who was charged a fee to enter consumed alcoholic beverages defendant supplied and subsequently, in a drunken state, killed someone in an automobile accident. To assist in resolving the issues in this case, we solicited and obtained the views of the Department of Alcoholic Beverage Control,[3] the state agency charged by our state Constitution with enforcement of the laws relating to the consumption of alcoholic beverages in this state. (Cal. Const., art. XX, § 22, fifth par. ["The Department of Alcoholic Beverage Control shall have the exclusive power, except

---

[2]    Plaintiffs do not challenge the lower court's ruling in favor of codefendants Carlos and Mary Manosa, Jessica's parents. Accordingly, we refer to defendant Jessica Manosa only.

[3]    We will use the abbreviation "ABC" as a shorthand for "Alcoholic Beverage Control." Hence, the Department of Alcoholic Beverage Control is referred to as "the Department of ABC" and the Alcoholic Beverage Control Act (Bus. & Prof. Code, div. 9, § 23000 et seq.) is referred to as "the ABC Act."

2

as herein provided and in accordance with laws enacted by the Legislature, to license the . . . sale of alcoholic beverages in this State . . . ."].)

After considering the views of the parties and the Department of ABC, we conclude the pleaded facts, which allege defendant charged an entrance fee to some guests (including the minor who caused the death), payment of which entitled guests to drink the provided alcoholic beverages, raise a triable issue of fact whether defendant sold alcoholic beverages, or caused them to be sold, within the meaning of section 25602.1, rendering her potentially liable under the terms of that statute as a person who sold alcohol to an obviously intoxicated minor. Having reached this decision, we need not, and thus do not, address the further question whether defendant might also be liable on the ground she was a person who was required to be licensed who furnished alcohol to an obviously intoxicated minor.

Because the Court of Appeal affirmed the trial court's grant of summary judgment in defendant's favor, we reverse.

## I. BACKGROUND

As the case comes to this court following the trial court's grant of defendants' motion for summary judgment, we "recite the evidence in the light most favorable to the nonmoving party (here, plaintiffs)." (*Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758, 764.) On the evening of April 27, 2007, defendant Jessica Manosa (Manosa) hosted a party at a vacant rental residence owned by her parents, defendants Carlos and Mary Manosa, without their consent. The party was publicized by word of mouth, telephone, and text messaging, resulting in an attendance of between 40 and 60 people. The vast majority of attendees were, like Manosa, under 21 years of age.

For her party, Manosa personally provided $60 for the purchase of rum, tequila, and beer. She also provided cups and cranberry juice, but nothing else.

3

Two of Manosa's friends, Mario Aparicio and Marcello Aquino, also provided money toward the initial purchase of alcohol, and Aquino purchased the alcoholic beverages for the party with this money. The beer was placed in a refrigerator in the kitchen, and the tequila and "jungle juice" (a mixture of rum and fruit juice) were placed outside on a table at the side of the house. Manosa did not have a license to sell alcoholic beverages.

Guests began to arrive at the party around 9:00 p.m., entering through a side gate in the yard. Aquino heard Manosa ask Todd Brown to "stand by the side gate to kind of control the people that came in and if he didn't know them, then charge them some money to get into the party." Brown thereafter served as a "bouncer," standing at the gate and charging uninvited guests an admission fee of $3 to $5 per person. Once inside, partygoers enjoyed music played by a disc jockey Manosa had hired and could help themselves to the beer, tequila, and jungle juice.

Thomas Garcia, who had not been invited and was unknown to Manosa, testified that a "big, tall, husky, Caucasian dude" was charging an entrance fee to get into the party. Garcia paid $20 so that he and three or four of his friends could enter. The person who took Garcia's money, presumably Brown, told him alcoholic beverages were available if he wanted them. Mike Bosley, another uninvited guest, declared he was charged $5 to enter the party. Brown eventually collected between $50 and $60 in entrance fees, and this money was used to buy additional alcohol sometime during the party.[4] The record is unclear whether any

---

[4]    The summary judgment record is unclear who purchased this additional alcohol and whether Manosa had personally asked someone to use the gate money to buy more alcohol. The parties assert it is undisputed that Mario Aparicio and Stephan Filaos bought the additional alcohol, although Aparicio denies doing so. One guest, Hani Abuershaid, overheard Filaos say Manosa had asked him to

*(footnote continued on next page)*

attendees brought their own alcoholic beverages or whether Manosa provided the only alcohol consumed on the premises.

Sometime before midnight, decedent Andrew Ennabe arrived at the party; he was Manosa's friend and an invited guest. Thomas Garcia and his friends arrived about 30 minutes later and were charged admission. Ennabe and Garcia, both under 21 years of age, were visibly intoxicated on arrival. Garcia in particular exhibited slurred speech and impaired faculties. By his own reckoning, he had consumed at least four shots of whiskey before arriving. Although Garcia later denied drinking anything at Manosa's party, other guests reported seeing him drinking there.

Once inside the gate, Garcia became rowdy, aggressive, and obnoxious. He made obscene and vaguely threatening comments to female guests, and either he or a friend dropped his pants. While Manosa claimed she was neither aware of Garcia's presence nor that he was causing problems with other guests, Garcia was eventually asked to leave for his inappropriate behavior. Ennabe and some other guests escorted Garcia and his friends off the premises and ultimately to their car. One of Garcia's friends spit on Ennabe, prompting Ennabe to chase him into the street. Garcia, who by this time was driving away, ran over Ennabe, severely injuring him. Ennabe later died from his injuries.[5]

---

*(footnote continued from previous page)*

purchase more alcohol using the money collected at the door, "because I think no one else had regulation of the money besides the bouncer and [Manosa]." Abuershaid also testified to seeing the bouncer give Filaos the money. Further, decedent Andrew Ennabe's brother declared he had heard Manosa ask Aparicio and Filaos to use money collected at the door to purchase additional alcohol.

[5]    Garcia was convicted of a felony in connection with Ennabe's death and was sentenced to 14 years in prison.

Plaintiffs Faiez and Christina Ennabe, on behalf of themselves and the estate of their son, filed a wrongful death action against defendant Manosa and her parents. Plaintiffs asserted three causes of action: general negligence, premises liability, and liability under section 25602.1. Defendants moved for summary judgment or adjudication, claiming plaintiffs could not show defendants were liable under section 25602.1, which permits liability for certain persons who serve alcohol to obviously intoxicated minors, and that they were entitled to civil immunity under section 25602, subdivision (b) and Civil Code section 1714, subdivision (c). Plaintiffs countered that by charging an entrance fee, Manosa had "sold" alcohol to party guests and was thus not entitled to civil immunity. The trial court granted defendants' motion for summary judgment on all causes of action and, in the alternative, also granted the motion for summary adjudication. The Court of Appeal affirmed.

We granted plaintiffs' petition for review.

## II. DISCUSSION

" ' "A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); . . . .) The moving party bears the burden of showing the court that the plaintiff 'has not established, and cannot reasonably expect to establish,' " the elements of his or her cause of action. [Citation.]' [Citation.] We review the trial court's decision de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017-1018.)

This case involves the scope of statutory immunity for social hosts who provide alcohol to their guests and the exception to that immunity for hosts who sell alcoholic beverages, or cause them to be sold, to obviously intoxicated minors.

6

The history of the applicable statutes is helpful to gain a proper understanding of the issues.

### A.  The Immunity Statutes

For the better part the 20th century, California case law held that a person who furnished alcoholic beverages to another person was not liable for any damages resulting from the latter's intoxication.  (*Cole v. Rush* (1955) 45 Cal.2d 345; *Fleckner v. Dionne* (1949) 94 Cal.App.2d 246; *Hitson v. Dwyer* (1943) 61 Cal.App.2d 803; see also *Lammers v. Pacific Electric Ry. Co.* (1921) 186 Cal. 379 [dictum].)  The Legislature acquiesced in these decisions, also known as dramshop laws, by declining to enact a contrary statutory scheme that would permit civil liability (*Cole*, *supra,* at p. 355 [noting the Legislature's failure to change the law despite making numerous other statutory changes "is indicative of an intent to leave the law as it stands in the aspects not amended"]), although it enacted legislation making the selling or furnishing of an alcoholic beverage to an obviously intoxicated person a misdemeanor in 1953 (former § 25602).[6]  This court first departed from the general common law rule of nonliability in 1971 when, noting the trend in a majority of other states, we ruled that a vendor could be liable for selling alcoholic beverages to an obviously intoxicated person who thereafter inflicted injury on third persons.  (*Vesely v. Sager*, *supra*, 5 Cal.3d 153.)  Overruling *Cole v. Rush*, *Vesely* held that furnishing alcohol to an already intoxicated person could be the proximate cause of an injury to a third person on a

---

[6]    Prior to 1978, section 25602 provided:  "Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any habitual or common drunkard or to any obviously intoxicated person is guilty of a misdemeanor."  (Stats. 1953, ch. 152, § 1, pp. 954, 1020.)  The same language now appears in subdivision (a) of the same statute.  (Stats. 1978, ch. 929, § 1, pp. 2903-2904.)

7

showing that the person furnishing the alcohol violated section 25602, the misdemeanor statute enacted in 1953. (*Vesely*, *supra*, at pp. 165-167.)

Five years later, in *Bernhard v. Harrah's Club*, *supra*, 16 Cal.3d 313, this court broadened the scope of potential liability. *Bernhard* involved a commercial vendor in Nevada that furnished alcohol to a California resident who then proceeded to injure another California resident while driving drunk in California. The defendant in *Bernhard*, a Nevada corporation, argued that because the misdemeanor statute had no extraterritorial effect, it was entitled to immunity. (*Bernhard*, *supra*, at p. 323.) Although our decision in *Vesely v. Sager*, *supra*, 5 Cal.3d 153, had relied on section 25602 for its analysis, *Bernhard* read *Vesely* in broader terms: "Although we chose to impose liability on the *Vesely* defendant on the basis of his violating the applicable statute, the clear import of our decision was that there was no bar to civil liability under modern negligence law. Certainly, we said nothing in *Vesely* indicative of an intention to retain the former rule that an action at common law does not lie." (*Bernhard*, *supra*, at p. 325.) *Bernhard* thus downplayed *Vesely*'s reliance on the criminality of serving an intoxicated person as the analytical linchpin of the modern rule permitting liability.

Finally, in 1978, this court extended the *Vesely* holding to noncommercial social hosts, reasoning that a private person who serves alcohol in a noncommercial setting to an obviously intoxicated guest with the knowledge that person intends to drive a vehicle while in an intoxicated state fails to act with reasonable care. (*Coulter v. Superior Court*, *supra*, 21 Cal.3d at pp. 153-155 (plur. opn. of Richardson, J.); *id*. at p. 156 (conc. opn. of Mosk, J., joined by Bird, C. J.); *id*. at p. 157 (conc. & dis. opn. of Newman, J.).) As the plurality explained: "We think it evident that the service of alcoholic beverages to an obviously intoxicated person by one who knows that such intoxicated person intends to drive

8

a motor vehicle creates a *reasonably foreseeable* risk of injury to those on the highway. [Citation.] Simply put, one who serves alcoholic beverages under such circumstances fails to exercise reasonable care." (*Coulter*, *supra*, at pp. 152-153.)

The Legislature responded to this trilogy of cases in 1978 by expressly abrogating their holdings and largely reinstating the previous common law rule that the consumption of alcohol, not the service of alcohol, is the proximate cause of any resulting injury. This 1978 legislation took three forms, spread across both the Civil Code and the Business and Professions Code. First, although Civil Code former section 1714 had provided generally that everyone is responsible for his own negligent or willful acts, the Legislature amended that statute, placing the existing language in new subdivision (a) and adding subdivisions (b) and (c) to qualify that general principle. New subdivision (b) of Civil Code section 1714 provided: "It is the intent of the Legislature to abrogate the holdings in cases such as Vesely v. Sager (5 Cal. 3d 153), Bernhard v. Harrah's Club (16 Cal. 3d 313), and Coulter v. Superior Court ([21] Cal. 3d [144]) and to reinstate the prior judicial interpretation of this section as it relates to proximate cause for injuries incurred as a result of furnishing alcoholic beverages to an intoxicated person, namely that the furnishing of alcoholic beverages is not the proximate cause of injuries resulting from intoxication, but rather the consumption of alcoholic beverages is the proximate cause of injuries inflicted upon another by an intoxicated person." (Stats. 1978, ch. 929, § 2, p. 2904.) Along these same lines, Civil Code section 1714, new subdivision (c) provided: "No social host who furnishes alcoholic beverages to any person shall be held legally accountable for damages suffered by such person, or for injury to the person or property of, or death of, any third person, resulting from the consumption of such beverages." (Stats. 1978, ch. 929, § 2, p. 2904.)

9

In the second change, the Legislature amended Business and Professions Code section 25602 to its current version by adding subdivisions (b) and (c). (Stats. 1978, ch. 929, § 1, p. 2904.)  Section 25602, whose previous sole provision made it a misdemeanor to serve an obviously intoxicated person, now provided in subdivision (b) that "No person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage [to any habitual or common drunkard or to any obviously intoxicated person] . . . shall be civilly liable to any injured person or the estate of such person for injuries inflicted on that person as a result of intoxication by the consumer of such alcoholic beverage."  Section 25602, new subdivision (c), like Civil Code section 1714, subdivision (b), expressly declared the Legislature's intent to overrule *Vesely*, *Bernhard*, and *Coulter*.  This "sweeping civil immunity" (*Strang v. Cabrol* (1984) 37 Cal.3d 720, 724) was intended "to supersede evolving common law negligence principles which would otherwise permit a finding of liability under the[se] circumstances" (*id*. at p. 725).

The third prong of the legislative response to this court's recognition of potential liability in alcohol cases authorized a "single statutory exception to the broad immunity created by the 1978 amendments."  (*Strang v. Cabrol*, *supra*, 37 Cal.3d at p. 723.)  Newly enacted section 25602.1 (Stats. 1978, ch. 930, § 1, pp. 2904-2905), concerned underaged drinkers and authorized a cause of action against licensees (i.e., those licensed to sell alcohol by the Department of ABC; see § 23009) who sell, furnish, or give away alcoholic beverages to obviously intoxicated minors who later injure themselves or others.[7]  Subsequent case law

---

[7]     As added by the 1978 amendments, the original version of section 25602.1 stated:  "Notwithstanding subdivision (b) of Section 25602, a cause of action may be brought by or on behalf of any person who has suffered injury or death against

*(footnote continued on next page)*

emphasized the narrowness of section 25602.1's exception to the general rule of civil immunity for providers of alcohol:  the exception applied only to *licensees* (*Cory v. Shierloh* (1981) 29 Cal.3d 430, 440 [noting in passing that nonlicensed sellers retained their immunity]), who provide alcohol to *obviously intoxicated minors* (see *Rogers v. Alvas* (1984) 160 Cal.App.3d 997, 1004).  Providing alcohol to sober minors or to obviously intoxicated adults was not actionable under section 25602.1.  (See *Cory*, *supra*, at p. 440 ["The obviously intoxicated minor, and those injured by him, retain a cause of action against the seller, but an adult consumer, and those similarly injured by him do not [citation]"].)  Nor did the exception apply to vendors who were required to be licensed, but for some reason were not (*ibid*. ["A preferred liability status is thus given to those sellers who refuse to obtain licenses."]), or to other nonlicensees (*Baker v. Sudo* (1987) 194 Cal.App.3d 936, 941-942 [no liability for a social host]; *Zieff v. Weinstein* (1987) 191 Cal.App.3d 243, 248 [same]).

Following the 1978 amendments, two subsequent judicial decisions prompted further legislative refinement.  First, in 1981, a minor who was injured when he became intoxicated at a party and crashed his car sued the party's host claiming, among other things, the defendant engaged in "the unlicensed and unlawful sale and furnishing of alcoholic beverages to minors."  (*Cory v. Shierloh*, *supra*, 29 Cal.3d at p. 433.)  When the trial court dismissed the case, citing the 1978 amendments that reestablished civil immunity, he appealed claiming the new

*(footnote continued from previous page)*

any person licensed pursuant to Section 23300 who sells, furnishes, gives or causes to be sold, furnished or given away any alcoholic beverage to any obviously intoxicated minor where the furnishing, sale or giving of such beverage to the minor is the proximate cause of the personal injury or death sustained by such person."  (Stats. 1978, ch. 930, § 1, p. 2905.)

laws were unconstitutional. (*Id.* at pp. 437-441.) This court upheld the new laws, despite noting the incongruity of conditioning liability on a defendant's status as a licensee.[8] (*Cory, supra,* at p. 440.) A few years later, the Ninth Circuit Court of Appeals decided a case involving a girl's death in a drunk driving accident allegedly caused when a club operated by the United States Department of Defense at the Concord Naval Weapons Station served alcohol to an obviously intoxicated minor. The federal appellate court held the club was not liable under section 25602.1 because it was not a licensed liquor provider under California law. (*Gallea v. United States* (9th Cir. 1986) 779 F.2d 1403.) As recognized by these two cases, persons who refused to obtain a liquor license and establishments permitted to serve alcohol on military bases without a license retained full immunity from liability.

In response to these two judicial decisions, the Legislature in 1986 amended section 25602.1 to its current version, specifically to overrule *Cory v. Shierloh* in part and *Gallea v. United States* in full. (See Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1053 (1985-1986 Reg. Sess.) as amended Jan. 13, 1986, pp. 2-3.)[9] A Senate committee report suggested the original law's distinction between licensees and those sellers without licenses who were required by law to be licensed "may not have been foreseen or intended by the

---

[8] Accordingly under section 25602.1 as enacted in 1978, "whether or not the selling or supplying of the liquor is a tortious *cause* of a resultant injury turns on the *license* status of the supplier and the *age* of the consumer. Causation in a common law sense, whether actual or physical, proximate or legal, has never pivoted on such a perilous and seemingly irrelevant fulcrum." (*Cory v. Shierloh*, *supra*, 29 Cal.3d at p. 440.)

[9] We grant defendant's request for judicial notice of the legislative history of the 1986 amendments to section 25602.1. (*In re Reeves* (2005) 35 Cal.4th 765, 777, fn. 15; *Elsner v Uveges* (2004) 34 Cal.4th 915, 929, fn. 10.)

Legislature." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1053 (1985-1986 Reg. Sess.) as amended Jan. 13, 1986, p. 4 (Senate Analysis).) Significantly, both the Assembly and Senate committees involved in the 1986 amendment indicated the bill would not change existing law with regard to social hosts who provide alcoholic beverages free to their guests. (See Sen. Analysis, *supra*, at p. 4 ["The bill would not . . . affect the existing immunity for social hosts as it would not impose any liability for the free furnishing of alcohol."].) Section 25602.1's exception to immunity now embraces those required to be licensed and those who sell alcohol on military bases. In addition, the Legislature excepted from the rule of civil immunity "any other person" who sells alcohol to an obviously intoxicated minor.

In sum, if a plaintiff can establish the defendant provided alcohol to an obviously intoxicated minor, and that such action was the proximate cause of the plaintiff's injuries or death, section 25602.1—the applicable statute in this case— permits liability in two circumstances: (1) the defendant was either licensed to sell alcohol, required to be licensed, or federally authorized to sell alcoholic beverages in certain places, and the defendant sold, furnished, or gave the minor alcohol or caused alcohol to be sold, furnished, or given to the minor; or (2) the defendant was "any other person" (i.e., neither licensed nor required to be licensed), and he or she sold alcohol to the minor or caused it to be sold. Whereas licensees (and those required to be licensed) may be liable if they merely furnish or give an alcoholic beverage away, a nonlicensee may be liable only if a *sale* occurs; that is, a nonlicensee, such as a social host, who merely furnishes or gives drinks away— even to an obviously intoxicated minor—retains his or her statutory immunity.[10]

---

**10**     Section 25602.1, as amended in 1986, provides in full: "Notwithstanding subdivision (b) of Section 25602, a cause of action may be brought by or on behalf

*(footnote continued on next page)*

13

**B. Application of Immunity Statutes**

With this statutory scheme in mind, we turn to the merits. For purposes of our review following a grant of summary judgment, given properly pleaded facts and viewing the evidence favorably to the nonmoving party (here, plaintiffs), we may assume that Thomas Garcia was underage,[11] that he paid to enter Manosa's party, that he was obviously intoxicated, that he consumed some of the alcoholic beverages Manosa had provided for guests, that Manosa was not licensed to sell alcohol, and that Garcia's intoxication was the proximate cause of Andrew Ennabe's death. Manosa contends she cannot be liable for Ennabe's death because, as a social host, she is entitled to civil immunity under both section 25602, subdivision (b) and Civil Code section 1714, subdivision (c).

In order to resolve this question, we first discuss whether the Business and Professions Code applies to a purported social host such as Manosa. Finding that it does, we then examine whether Manosa *sold* alcohol within the meaning of section 25602.1. As we explain, we find the Business and Professions Code applies here, and that Manosa's actions constituted a sale rendering her potentially liable as a person who sold alcohol to an obviously intoxicated minor.

---

*(footnote continued from previous page)*

of any person who has suffered injury or death against any person *licensed, or required to be licensed*, pursuant to Section 23300, or any person authorized by the federal government to sell alcoholic beverages on a military base or other federal enclave, who sells, furnishes, gives or causes to be sold, furnished or given away any alcoholic beverage, and *any other person* who sells, or causes to be sold, any alcoholic beverage, to any obviously intoxicated minor where the furnishing, sale or giving of that beverage to the minor is the proximate cause of the personal injury or death sustained by that person." (Italics added.)

[11] That is, he was under 21 years of age. (See *Chalup v. Aspen Mine Co.* (1985) 175 Cal.App.3d 973, 975, fn. 2 [for purposes of § 25602.1, " 'minor' refers to persons under the age of 21"]; *Rogers v. Alvas*, *supra*, 160 Cal.App.3d at p. 1004 [same].)

14

### 1. *Does the Business and Professions Code Apply to Manosa?*

At the time this case arose in 2007, Civil Code section 1714, subdivision (c) provided: "No social host who furnishes alcoholic beverages to any person may be held legally accountable for damages suffered by that person, or for injury to the person or property of, or death of, any third person, resulting from the consumption of those beverages." (Stats. 2003, ch. 62, § 15, pp. 293, 294.)[12] Business and Professions Code section 25602, subdivision (b) appears largely to overlap that provision, providing: "No person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage pursuant to subdivision (a) of this section shall be civilly liable to any injured person or the estate of such person for injuries inflicted on that person as a result of intoxication by the consumer of such alcoholic beverage." Section 25602.1, the exception to this statutory immunity, appears in the Business and Professions Code but the Civil Code contains no similar provision.

Although neither party raises it, a preliminary issue is presented: Does section 25602.1 apply to a private person who, like Manosa, is not in the business

---

[12]    Since 2007, the statute has been amended twice. In 2010, the Legislature added former subdivision (d) to Civil Code section 1714: "Nothing in subdivision (c) shall preclude a claim against a parent, guardian, or another adult who knowingly furnishes alcoholic beverages at his or her residence to a person under 21 years of age, in which case, notwithstanding subdivision (b), the furnishing of the alcoholic beverage may be found to be the proximate cause of resulting injuries or death." (Stats. 2010, ch. 154, § 1.)

A year later, the Legislature moved former subdivision (d) to subdivision (d)(1) and added what is now Civil Code section 1714, subdivision (d)(2): "A claim under this subdivision may be brought by, or on behalf of, the person under 21 years of age or by a person who was harmed by the person under 21 years of age." (See Stats. 2011, ch. 410, § 1.) The same amendment also added that liability under section 1714, subdivision (d) would attach if a person knew, or should have known, that the person served was under 21.

or profession of selling or providing alcoholic drinks?  We solicited supplemental briefing on, among other questions, whether that Business and Professions Code provision applies to businesses only, and whether private persons are governed solely by the Civil Code, which includes no explicit exception to its statutory immunity for those who sell or furnish alcoholic beverages to others.  After considering the views of the parties and that of amicus curiae, the Department of ABC, we conclude that the placement of section 25602.1 in the Business and Professions Code does not limit the scope of that provision to commercial enterprises.  First, the structure of section 25602.1 suggests it applies to noncommercial providers of alcohol.  The statute addresses four categories of persons and we assume those falling in the first three categories—those licensed by the Department of ABC, those without licenses but who are nevertheless required to be licensed, and those authorized to sell alcohol by the federal government—are for the most part engaged in some commercial enterprise.  The final category of persons addressed by section 25602.1 is more of a catchall:  "any other person" who sells alcohol.  Consistent with the plain meaning of the statutory language and the views of the Department of ABC, we find this final category includes private persons and ostensible social hosts who, for whatever reason, charge money for alcoholic drinks.  To be sure, this category poses something of a tautology, for a person who sells alcoholic beverages is generally required to have a license (§ 23399.1), threatening to collapse this fourth category into the second one,[13] but we agree with the Department of ABC that the plain

---

[13]      The two categories are not precisely congruent, as an extremely small group of purveyors of alcohol are allowed under the code to operate without a license.  Thus, under section 23102, subdivision (a), a person acting on behalf of a deceased, insolvent or incompetent licensee can sell alcoholic beverages for 30 days without a license.  In addition, section 23399.5 permits limousine and hot air

*(footnote continued on next page)*

16

meaning of the word "person" as used in section 25602.1's final category can include someone like defendant Manosa, a private person who was not engaged in a commercial enterprise.

Second, that the Business and Profession Code applies to more than "businesses" and "professions" is clearly inferable from other provisions in the code. Chapter 16 of the ABC Act is entitled "Regulatory Provisions" (25600 et seq.) and includes section 25602.1, the exception to civil immunity at issue in this case. The same chapter includes provisions regulating such noncommercial activities as the possession or delivery of an alcoholic beverage in a public schoolhouse (§ 25608, subd. (a)), possession of an open container of alcohol in a public park (§ 25620), and bringing an alcoholic beverage into a state prison or county jail (§ 25603). This court has itself recognized that a violation of section 25658 (providing an alcoholic beverage to someone under 21 years old) can be committed by a private person. (*In re Jennings* (2004) 34 Cal.4th 254.) In addition, chapter 6, entitled "Issuance and Transfer of Licenses" (§§ 23950–24082),includes several provisions addressed to the noncommercial purveying of alcoholic beverages, such as section 24045.1 (temporary daily license available for events staged by political, charitable or religious organizations), section 24045.2 (temporary off-sale license available for nonprofit public television stations) and section 24045.3 (temporary off-sale licenses available for certain women's educational and charitable organizations). The inclusion in the Business and Professions Code of so many statutes addressed to the noncommercial provision of

_____

*(footnote continued from previous page)*

balloon operators to serve alcoholic beverages without a license so long as they do not charge extra for alcohol, although the Legislature enacted this provision in 1986 so it could not have had such operators in mind when it enacted section 25602.1 in 1978.

17

alcoholic beverages further supports the conclusion that section 25602.1 is not, by virtue of its placement in that code, limited to commercial enterprises only.

Finally, although we reject the suggestion that the scope of the Business and Professions Code, and thus section 25602.1, is confined to commercial, profit-generating endeavors, we note that even were we to find to the contrary, and that all private, noncommercial social-host scenarios should be governed exclusively under the provisions of Civil Code section 1714, that argument would merely beg the question of when, and under what conditions, an ostensible social host (such as defendant Manosa) *loses that characterization*—and thus becomes a commercial entity falling within the jurisdiction of the Business and Professions Code—by selling alcoholic beverages. Accordingly, merely attaching to Manosa the label of "social host" does not advance the analysis, for what would we call a social host who sells alcoholic beverages? We thus turn to an examination of whether Manosa sold alcoholic beverages within the meaning of section 25602.1.

### 2. *Did Manosa Sell Alcoholic Beverages?*

Section 25602.1 provides in pertinent part that "a cause of action may be brought by or on behalf of any person who has suffered injury or death against [various licensees, as well as]. . . *any other person who sells*, *or causes to be sold*, any alcoholic beverage, to any obviously intoxicated minor where the . . . sale . . . of that beverage to the minor is the proximate cause of the personal injury or death sustained by that person." (Italics added.) Thus, even aside from the question of licensing, a private "person" may be held to have shed her civil immunity if she sold alcoholic beverages (or caused them to be sold) within the meaning of section 25602.1. The meaning of the word "sold" in this context is a question of statutory construction. "As with all questions of statutory interpretation, we attempt to discern the Legislature's intent, 'being careful to give the statute's words their

18

plain, commonsense meaning.  [Citation.]  If the language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is unnecessary.' " (*Ste. Marie v. Riverside County Regional Park & Open-Space Dist.* (2009) 46 Cal.4th 282, 288.)

At the threshold, we find two principles provide potential guidance, but, as is sometimes the case, those principles point in somewhat opposite directions.  First, the state Constitution grants exclusive power to the State of California to regulate the sale of alcoholic beverages (Cal. Const., art. XX, § 22, first par.), the Legislature has exercised that power by the enactment of the ABC Act (§ 23000 et seq.), and the act expressly provides that its terms should be "liberally construed" to accomplish the stated purposes of the act, which include "to eliminate the evils of unlicensed . . . selling, and disposing of alcoholic beverages, *and to promote temperance in the use and consumption of alcoholic beverages*" (§ 23001, italics added).  Giving the law a liberal construction that leans in favor of promoting temperance suggests that, in a close case, we should err on the side of permitting liability, for the possibility of liability may provide a strong deterrent against the provision of alcohol to minors, especially those who are already obviously intoxicated.

But at the same time, because the general rule of law is one of civil immunity for the sale or provision of alcoholic beverages (§ 25602, subd. (b); Civ. Code, § 1714, subd. (c)), section 25602.1 represents an exception to that general rule and therefore should be strictly construed to achieve the Legislature's intent. (*Hernandez v. Modesto Portuguese Pentecost Assn.* (1995) 40 Cal.App.4th 1274, 1281 [§ 25602.1 should be strictly construed]; *Salem v. Superior Court* (1989) 211 Cal.App.3d 595, 600 [same].)  Giving section 25602.1 a strict construction suggests that, in a close case, we should lean towards finding a wide scope of civil

19

immunity. Cognizant of both these concepts, we turn to the language of the ABC Act to discern the meaning of a "sale" of alcohol.

The ABC Act is division 9 of the Business and Professions Code, beginning with section 23000. The preliminary provisions of the ABC Act set forth basic definitions for the act, which "govern the construction of this division" "[u]nless the context otherwise requires." (§ 23002.) Section 23025 defines the terms "sell," "sale," and "to sell" as including "*any transaction* whereby, for *any consideration*, title to alcoholic beverages is transferred from one person to another." (Italics added.) Because sections 25602 and 25602.1 also appear in the ABC Act, section 23025's definition of "sale" applies to those sections. We thus agree with the Department of ABC that the definition of a sale of alcoholic beverages in section 23025 applies to section 25602.1.

Section 23025's broad definition of a sale shows the Legislature intended the law to cover a wide range of transactions involving alcoholic beverages: a qualifying sale includes "*any* transaction" in which title to an alcoholic beverage is passed for "*any* consideration." (Italics added.) Use of the term "any" to modify the words "transaction" and "consideration" demonstrates the Legislature intended the law to have a broad sweep and thus include both indirect as well as direct transactions. (See *Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 533 [Legislature's use of the word "any" suggests it intended a broad construction]; *Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 920 [same].)

Contrary to the foregoing, defendant urges us to embrace the Court of Appeal's reasoning, which found no sale because "there [was] no transfer of title to an alcoholic beverage at the time the entrance fee [was] paid," and that "it is difficult, if not impossible, to determine which individual or individuals held title to the alcoholic beverages consumed by Garcia." But the definition of a sale under section 23025 is broad enough to encompass indirect sales; the statute

20

requires simply a transfer of title, not necessarily a transfer of possession of a particular drink. This conclusion follows from both the statutory definition of a sale to include "any" transaction, as well as the Legislature's 1937 amendment to section 23025 to clarify its meaning. The original version of what is now section 23025 was an uncodified precursor to the ABC Act and provided: "The transfer of title to alcoholic beverages unaccompanied by a transfer of possession of such beverages shall not be deemed a sale of such beverages." (Stats. 1935, ch. 330, § 2, pp. 1124-1125.) The Legislature deleted that sentence in 1937, thereby broadening the definition of sale to encompass those situations in which an immediate transfer of possession does not occur. (Stats. 1937, ch. 758, § 3, p. 2129.) " 'We presume the Legislature intends to change the meaning of a law when it alters the statutory language [citation], as for example when it deletes express provisions of the prior version . . . .' " (*State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (2008) 44 Cal.4th 230, 244.)

Nor is it difficult to discern when title to a drink passed to Garcia. Although his payment of the admission fee did not entitle him to, say, take possession of all the alcohol at the party, nor did he at that time necessarily take title to any particular drink, when Garcia did pour himself a drink and begin to consume it, title to that drink clearly passed to him. We conclude the plain meaning of a "sale," as defined in section 23025 and used in section 25602.1, includes Garcia's payment of the entrance fee for Manosa's party, irrespective of the fact possession of a particular drink did not occur immediately upon payment.

Defendant further argues the statutory definition of "sale" in section 23025 is ambiguous because in other contexts the Legislature has specifically provided that a sale includes both direct and indirect sales. She cites two examples from the code: Section 24070, subdivision (c) restricts a corporate licensee from selling "a controlling interest in the stock ownership of the licensee" either "*directly or*

21

*indirectly, . . .* for a period of two years from date of issuance of the license . . . ." (Italics added.) Similarly, section 25511 provides in part that a beer manufacturer or beer wholesaler "may . . . sell, *directly or indirectly*, any equipment, fixtures, or supplies, other than alcoholic beverages, to a retailer whose equipment, fixtures, or supplies were lost or damaged as a result of a natural disaster." (Italics added.) Neither statute is relevant to the issue before us. Section 24070, subdivision (c) addresses the sale of stock ownership, not alcoholic beverages. Section 25511 addresses the sale of "equipment, fixtures, or supplies, *other than alcoholic beverages.*" (Italics added.) By contrast, section 23025 defines the terms "sell," "sale" and "to sell" in the specific context of the conveyance of alcoholic beverages, and the Legislature's use of the term "any" to modify the nouns "transaction" and "consideration" is another way of including indirect sales within the scope of the definition. Accordingly, the use of the phrase "directly or indirectly" in sections 24070 and 25511 does not render ambiguous section 23025's expansive definition of a sale of alcoholic beverages.

Although the parties have cited no previous California appellate decision addressing whether the collection of what is, in essence, a cover charge constitutes a sale of alcohol under the ABC Act, nor has our research revealed any, our decision that Manosa sold alcohol is consistent with section 25604. Section 25604 provides in part: "It is a public nuisance for any person to keep, maintain, operate or lease any premises for the purpose of providing therein for a consideration a place for the drinking of alcoholic beverages by members of the public or other persons, unless the person and premises are licensed under this division. As used herein 'consideration' *includes cover charge*, the sale of food, ice, mixers or other liquids used with alcoholic beverage drinks, or the furnishing of glassware or other containers for use in the consumption of alcoholic beverage drinks." (Italics added.) To conclude that "consideration" for a drink (and hence a sale) includes a

22

cover charge for purposes of section 25604, but not for section 25602.1, would make little sense. Certainly defendant cites no evidence the Legislature intended such an idiosyncratic definition of the term "sale."

Our conclusion that the pleaded facts suggest a sale occurred within the meaning of section 25602.1 is consistent with an opinion prepared by the Office of the Attorney General.[14] (See 68 Ops.Cal.Atty.Gen. 263 (1985) (AG Opinion).) The director of the Department of ABC, who is charged with enforcing the ABC Act (see § 23050 et seq.), had asked this question of the Office of the Attorney General: "May the operator of a commercial enterprise who does not have an alcoholic beverage license legally offer and provide 'complimentary' alcoholic beverages to any interested adult guest, customer or passenger of the business or service, without specific charge while at the same time charging for the product provided or the services rendered?" Focusing its inquiry on whether the complimentary beverages were in fact free, and not whether, strictly speaking, title to a particular drink had passed from seller to buyer, the Attorney General concluded that offering a complimentary drink, while at the same time charging for another related service or product, constituted a sale under section 23025. (AG Opinion, *supra*, at p. 263.) While the AG Opinion concerned an "operator of a commercial enterprise" and not an ostensible social host, the Attorney General's

---

**14** As we have explained, " '[a]bsent controlling authority, [the Attorney General's opinion] is persuasive because we presume that the Legislature was cognizant of the Attorney General's construction of [the statute] and would have taken corrective action if it disagreed with that construction.' " (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1013.) "Attorney General opinions are entitled to considerable weight." (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1087, fn. 17; see also *California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 17 [" 'Opinions of the Attorney General, while not binding, are entitled to great weight.' "].)

23

reasoning is pertinent here because he framed the issue as "whether the 'complimentary' beverages are in fact 'free' or whether they are in reality purveyed for a 'consideration.' " (*Id*. at p. 265.)  In other words, did a sale of alcoholic beverages occur?

Observing that no California cases on the subject existed, the Attorney General examined three out-of-state cases.  In *N. Y. S. Liquor Auth. v. Fuffy's Pancake House, Ltd.* (N.Y.App.Div. 1978) 409 N.Y.S.2d 20, a restaurant provided complimentary glasses of wine when a patron paid for a meal.  In *N. Y. S. Liquor Auth. v. Sutton Soc. Club.* (N.Y.Sup.Ct. 1978) 403 N.Y.S.2d 443, a social club charged its members and their guests a fee that entitled them to enter the club and to obtain "free" alcoholic beverages.  Finally, in *Commonwealth v. Worcester* (1879) 126 Mass. 256, the Supreme Judicial Court of Massachusetts addressed a case involving a dwelling house that charged for meals that included free alcoholic beverages.  The decisions in all three cases concluded a sale of alcoholic beverages had occurred.

In light of this sister-state authority, the Attorney General concluded that when consideration for an alcoholic beverage is included in the basic charge for another item or service (such as a meal, admission to an event, hotel room rental, or limousine rental charge), " '[i]t is wholly immaterial that no specific price is attached to those articles separately.'  Therefore, the furnishing of the beverages, although denominated 'complimentary,' *are for a consideration and constitute a sale* within the meaning of California's Alcoholic Beverage Control Act."  (AG Opinion, *supra*, 68 Ops.Cal.Atty.Gen., at p. 267, italics added.)  Under this reasoning, Manosa's act of charging guests a fee in exchange for entrance to her party and access to the alcoholic beverages she provided constitutes a sale under sections 23025 and 25602.1 because the beverages were purveyed for consideration and therefore not free.

24

Were further support needed, we observe that our interpretation of a sale for purposes of the ABC Act in general, and section 25602.1 in particular, is consistent with that of the Department of ABC. The department, appearing at our invitation as amicus curiae, opines that "a sale may occur whether the payment for alcohol is made at a bar upon delivery of the alcohol, *or at the door as the price of admission to the premises where alcohol is served*." (Italics added.) The department's view, as expressed in its amicus curiae brief, is consistent with its own internal guidelines, as expressed in a November 2009 trade enforcement information guide (TEIG) to serve as an industry reference and enforcement guide for the ABC Act.[15] In a subsection entitled "Private Parties," addressing licensure requirements related to private parties where alcohol is served, the TEIG notes that section 23399.1, specifying exemptions from the requirement of a liquor license, does not require a license if, among other factors, "there is no sale of an alcoholic beverage" at the party. (TEIG, *supra,* at pp. 21-22.) But the TEIG then cautions: "Be aware that the definition of 'sale' includes <u>indirect</u> transactions other than merely paying for a glass of wine or other drink containing alcohol. For instance, *if an admission fee is charged . . . and the alcohol is included, but not separately charged, an ABC license is required*." (*Id*. at p. 22, original underscoring, italics added.) The TEIG thus supports the conclusion that under the ABC Act a sale includes indirect transactions such as occurred at Manosa's party. While the TEIG

---

**15** Although both parties discuss the TEIG and debate its usefulness, it apparently was never reduced to hard copy and existed as an online resource only. The TEIG no longer appears on the department's Web site, but can be found at: <http://web.archive.org/web/20101117044811/http://www.abc.ca.gov/trade/TEU %20Information%20Guide%202009%20v2.pdf> (as of Feb. 24, 2014).

itself is not entitled to judicial deference,[16] that it is consistent with the meaning of "sale" urged by the department in its amicus curiae brief is significant, as the department has considerable expertise in enforcing the ABC Act. (See *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (1999) 71 Cal.App.4th 1518, 1523 ["As a rule, it is appropriate for courts to accept the administrative expertise of the Department . . . ."].)

Thus, according to the plain meaning of section 23025 defining a sale, the opinion of the Attorney General, and the interpretation of the Department of ABC, a "sale" of alcoholic beverages under 25602.1 includes the type of transactions that occurred at defendant Manosa's party. Because she sold Garcia alcoholic beverages at her party, section 25602.1 permits "a cause of action [to] be brought [against her] by or on behalf of any person who has suffered injury or death."

Defendant's counterarguments are unpersuasive. She contends primarily that the definitions of the terms "sell," "sale," and "to sell" in section 23025 (hereafter "sale") necessarily imply a transaction that results in a commercial gain or profit for the seller. Observing that the statutory definition in section 23025 applies "[u]nless the context otherwise requires," she argues the context of section 25602.1's exception to the general rule of civil immunity requires we recognize a

---

[16]    Although the TEIG itself cannot be enforced and is not binding legal authority because, as the parties acknowledge, it was not promulgated in accordance with the Administrative Procedure Act (Gov. Code, § 11340 et seq.), we can *consider* the Department of ABC's interpretation of the law to the extent it is persuasive. (See *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 576-577 [holding that while we do not defer to the Dept. of Labor Standard Enforcement's interpretation of Industrial Welfare Com. wage orders, "we do not necessarily reject its decision" either]; see also *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 563 [court may adopt a "statutory interpretation embodied in a void regulation if the court independently determines that the interpretation is correct"].)

26

commercial gain component for the term "sale" so as to avoid rendering the term "furnish," used earlier in the same statute, mere surplusage. "Courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage." (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 22; see *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 634 [same].) Placement of the definition of a "sale" in the Business and Professions Code instead of the Civil Code, she further contends, suggests that, in context, the definition contemplates a transaction of a business or commercial nature. (See *Van Horn v. Watson* (2008) 45 Cal.4th 322, 327 & fn. 6 [that good Samaritan immunity statute was placed in the Health & Saf. Code rather than the Civ. Code suggests it applied to emergency medical care only].)[17]

We decline to read a financial profit or commercial gain requirement into the phrase "sells, or causes to be sold," as used in section 25602.1. First, when construing section 25602.1, no reason appears to refrain from employing the definition of "sale" set forth in section 23025, and that statutory definition—"*any* transaction" for "*any* consideration" (italics added)—does not specify that some profit or gain must be made or intended. " 'Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' " (*In re Jennings*, *supra*, 34 Cal.4th at p. 265.) "[W]e must be careful not to add requirements to those already supplied by the Legislature." (*Ibid*.; see *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998 [it is a "cardinal rule of statutory construction that courts must not add provisions to statutes"].) We note the

---

[17] The holding in this case was superseded by an amendment to Health and Safety Code section 1799.102. (Stats. 2009, ch. 77, § 1.)

27

Department of ABC, the state agency tasked with interpreting and implementing the ABC Act, agrees that "[n]either profit nor intent to realize a profit is necessary for a sale to occur" under section 23025's definition of a sale, and that "[c]onsideration which is equal to or less than the seller's cost is still good consideration, as long as it represents some benefit to the seller or some prejudice to the buyer. (Civil Code, § 1605.)[18] The buyer's purchase price, however the seller intends to use it, is good consideration."

Second, contrary to defendant's argument, our rejection of a commercial gain component does not convert section 25602.1's use of the term "furnish"—in the statutory phrase permitting liability for licensees who "sell, furnish or give away" alcoholic beverages—into meaningless surplusage. A sale requires consideration; mere furnishing does not.

Third, in permitting potential liability for the provision of alcohol to obviously intoxicated minors in section 25602.1, the Legislature distinguished between licensees—presumably business or commercial entities such as bars and restaurants—and "any other person"—presumably including noncommercial entities or individuals such as Manosa. This version of section 25602.1, amended to its current form in 1986, was partly enacted in response to *Cory v. Shierloh*, *supra*, 29 Cal.3d 430, which had found a social host immune from liability for injuries to a minor allegedly injured after he became intoxicated at a private party. From this we may infer the Legislature was aware of, and attempted to address,

---

**18** Civil Code section 1605 states: "Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

28

the problem of providing alcohol to minors in social settings in which no profit was expected.

Defendant raises additional counterarguments to our interpretation of the word "sale" but they are even less persuasive. She first contends we should not apply section 23025's definition of a sale here because it will lead to "illogical results" and create an unworkable standard in the context of social parties. Observing that consideration for a sale need not be in cash, but may encompass "any value whatever" (*Estate of Freeman* (1965) 238 Cal.App.2d 486, 489; see generally Civ. Code, § 1605), defendant hypothesizes that a promise to attend a friend's party or to bring a dessert to a social gathering where the host provides alcoholic beverages would constitute a sale under a broad reading of section 23025.

Defendant's hypothetical poses a false equivalency. In the usual social situation, the dessert or other gift brought by an invited guest and given to the host cannot fairly be characterized as a transaction in which consideration is given in exchange for alcoholic beverages provided by the host; the dessert or other offering is simply a commonplace gift consistent with ordinary etiquette. (See § 23025 [definition of a sale requires a "transaction"].) We need not sweep all informal potlucks into the jurisdiction of the Department of ABC's licensure purview to conclude the instant situation, in which Manosa operated what was in essence a pop-up nightclub that required a cover charge for entry, falls within section 23025's definition of a sale of alcohol. The Department of ABC agrees, explaining that "situations involving casual reimbursement among friends who have agreed to purchase alcohol together rarely, if ever, arise for the Department, and the Department does not make a practice of intruding into clearly private parties to assess the casual pooling of money among friends to buy alcohol. On the other hand, circumstances in which *alcohol is clearly being transferred in*

29

*return for a purchase price*, and the only defense to licensure is either that the alcohol is priced at cost or that a fee is charged for the privilege of entering [the] premises and consuming alcohol there, *present clear cases of sales* requiring a license."  (Italics added.)

As to defendant's further contention that the standard we recognize today will prove "unworkable," we observe the Department of ABC, the agency responsible for enforcing the law with respect to the many ways in which alcoholic beverages can be distributed, expresses no concern the standard we now recognize is "unworkable"; indeed, our definition of a sale is consistent with both the plain meaning of section 23025 and the department's own view of the law. We agree with the department's further assertion that, faced with normal social gatherings, to interpret the statutory language strictly, leading to absurd results not contemplated by the Legislature, would be unjustified.

Noting that alcohol is "furnished at an infinite variety of social settings hosted by nonlicensees—from gallery openings, bar mitzvahs, weddings, political fundraisers and charity events—where admission is not 'free' and financial contributions from attendees are expected or required," defendant argues by a *reductio ad absurdum* that this court would wreak havoc on the "social fabric of modern life" were we to recognize indirect transactions could qualify as sales of alcohol under section 23025.  The assertion is exaggerated.  One does not normally charge guests an entrance fee to attend bar mitzvahs, weddings, or gallery openings, and the provision of alcoholic beverages to guests invited to such events typically is governed by social host immunity under Civil Code section 1714, subdivision (c). (Even if a host at such an event charged his or her guests for alcohol, such payment would simply raise questions of licensure, and civil liability could attach only if the host sold alcohol to an obviously intoxicated minor.)  In any event, in contrast to how Manosa conducted herself at her party,

30

ordinary social hosts do not use bouncers, allow uninvited strangers into their homes, or extract an entrance fee or cover charge from their guests. Nor does maintaining the social fabric of our society depend on protecting from civil liability those persons who would sell alcoholic beverages to minors who are already visibly intoxicated.

Defendant further argues that our interpretation of section 25602.1 will yield irrational results because some guests will pay but not drink, some will drink an alcoholic beverage provided by someone other than the host, and some will enter the party without being charged. To have liability turn on such facts, defendant argues, is absurd. (See *In re J.W.* (2002) 29 Cal.4th 200, 210 ["courts will not give statutory language a literal meaning if doing so would result in absurd consequences"].) We disagree. If a paying guest does not drink, there can be no liability, because section 25602.1 requires that the sale of alcohol be the proximate cause of the injury. If the guest drinks a beverage provided by someone other than the host, the same result obtains because the host's sale of alcohol cannot be said to have been the cause of the minor's intoxication and hence the injury. Finally, for guests who pay no admission charge the host retains her immunity, because without consideration there can be no sale under section 23025. The final category of section 25602.1, permitting liability for "any other person who sells," requires proof of a sale (that is, a transaction for consideration), and is not irrational for distinguishing between paying and nonpaying partygoers. In any event, a social host can retain her immunity by simply refraining from charging any of her invited guests.

In sum, we conclude that if, as indicated by plaintiff's evidence in opposition to the summary judgment motion, defendant Manosa charged an entrance fee to her party which enabled party guests to drink the alcoholic beverages she provided, she sold such beverages (or caused them to be sold)

31

within the meaning of section 23025, and can be liable for Ennabe's death under 25602.l's exception to immunity for persons who sell alcoholic beverages to obviously intoxicated minors.

### III. CONCLUSION

Where injuries are proximately caused by excess alcohol consumption, our Legislature has carefully balanced the interests involved and settled on a rule generally precluding liability for those who provide alcoholic beverages, on the ground that "the consumption of alcoholic beverages rather than the serving of alcoholic beverages [is] the proximate cause of injuries inflicted upon another by an intoxicated person." (§ 25602, subd. (c).) Specifically addressing the potential liability of social hosts, the Legislature has provided that "no social host who furnishes alcoholic beverages to any person may be held legally accountable for damages suffered by that person, or for injury to the person or property of, or death of, any third person, resulting from the consumption of those beverages." (Civ. Code, § 1714, subd. (c).)

But the Legislature has also established some narrow exceptions to this broad civil immunity, one of which is potentially applicable here: liability may attach because plaintiff alleges facts suggesting that defendant Manosa was a "person who [sold], or cause[d] to be sold, any alcoholic beverage, to any obviously intoxicated minor." (§ 25602.1.) A "sale" of alcohol, in turn, is defined as "any transaction" for "any consideration." (§ 23025.) Because the facts, read in a light most favorable to plaintiffs (*Clayworth v. Pfizer, Inc*., *supra*, 49 Cal.4th at p. 764), support the conclusion Manosa is a person who sold alcoholic beverages to Garcia, a minor who was obviously intoxicated, and Garcia's intoxication was the proximate cause of Andrew Ennabe's death, she is potentially liable under section 25602.1, and the trial court erred in granting summary judgment in defendant's favor.

32

The decision of the Court of Appeal is reversed and the case remanded for further proceedings consistent with our opinion.

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Ennabe v. Manosa

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 190 Cal.App.4th 707
**Rehearing Granted**

_____

**Opinion No.** S189577
**Date Filed:** February 24, 2014

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Robert A. Dukes

_____

**Counsel:**

Innabi Law Group, Abdalla J. Innabi and Amer Innabi for Plaintiffs and Appellants.

The Arkin Law Firm and Sharon J. Arkin for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiffs and Appellants.

Morris, Polich & Purdy, Richard H. Nakamura, Jr., Dean A. Olson and Sheena Y. Kwon for Defendants and Respondents.

Kamala D. Harris, Attorney General, Susan Duncan Lee, Acting State Solicitor General, Alicia M. B. Fowler, Assistant Attorney General, and Jerald L. Mosley, Deputy Attorney General, for Department of Alcoholic Beverage Control as Amicus Curiae, upon the request of the Supreme Court.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Abdalla J. Innabi
Innabi Law Group
2500 E. Colorado Blvd., Suite 230
Pasadena, CA  91107
(626) 395-9555

Richard H. Nakamura, Jr.
Morris, Polich & Purdy
1055 West Seventh Street, 24th Floor
Los Angeles, CA  90017-2503
(213) 891-9100