Filed 9/14/15  Woods v. Simonse CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DAVE WOODS et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> JOHN SIMONSE et al., <br><br> Defendants and Respondents. | A140899 <br><br> (Contra Costa County <br> Super. Ct. No. C0903517) |

The trial court granted summary judgment against plaintiffs Dave and Susan Woods and in favor of John Simonse and a number of entities related to him (collectively, the Simonse defendants) after rejecting causes of action for conspiracy to defraud, conspiracy to intentionally inflict emotional distress, and declaratory relief.[1]  On appeal, the Woodses argue the court erred by granting the motion for summary judgment, sustaining a number of objections to evidence they submitted in opposition to it, and denying their motion for reconsideration.  We affirm.

I.

FACTUAL AND PROCEDURAL
BACKGROUND

In June 2005, the Woodses lent $416,000 to Chetcuti & Associates, a company run by Benny Chetcuti.  The loan was to be secured by real property owned by Chetcuti &

---

[1] The entities are Magnate Fund #1 LLC, Magnate Fund #2 LLC, Magnate Fund #3 LLC, JWS Capital Investments, LHJS Investments, 27th Street Associates LLC, South Van Ness Associates LLC, 20 Parkridge LLC, and 55 Woodward LLC.

1

Associates, but the deed of trust prepared in 2005 identified no specific property and was not recorded. Chetcuti later told the Woodses that a property on Woodward Street in San Francisco (the Woodward property) was the property securing the loan.

In 2007 and 2008, one of Simonse's entities, Magnate Fund #2 LLC, made loans totaling $1,539,000 to Chetcuti and some of his businesses. Those loans were secured by recorded deeds of trust on the Woodward property.

In late 2009, after Chetcuti missed several payments on the Woodses' loan, the couple demanded repayment but were told he did not have the money. Chetcuti and his companies also defaulted on one of the loans to Magnate Fund #2. Magnate Fund #2 recorded a notice of default on the Woodward property and later acquired it. Meanwhile, Chetcuti filed for bankruptcy, naming over 100 creditors. The Woodses claim that of those creditors, only Simonse and his entities received any security for their loans.

The Woodses filed this lawsuit, alleging that Chetcuti had operated a Ponzi scheme with the Simonse defendants. The Woodses brought causes of action against the Simonse defendants for conspiracy to defraud, conspiracy to commit conversion, conspiracy to intentionally inflict emotional distress, and declaratory relief.[2] The trial court sustained without leave to amend those defendants' demurrer to the conversion-related claim.

The Simonse defendants then moved for summary judgment or, in the alternative, summary adjudication of the remaining three claims against them. The trial court granted summary judgment after it sustained various objections to evidence the Woodses submitted in opposition. The court later denied the Woodses' motion for reconsideration, and a judgment of dismissal in the Simonse defendants' favor was entered.

---

[2] The Woodses also sued Chetcuti, but he is not a party to this appeal.

## II.

### DISCUSSION

A. *The Trial Court Properly Granted Summary Judgment Because No Evidence Was Presented to Create a Triable Issue Whether the Simonse Defendants Intended to Aid Any Wrongdoing.*

The Woodses argue the trial court erred by granting summary judgment because triable issues of material fact exist as to all three claims. We disagree.

1. The standard of review and issues we address.

Summary judgment is appropriate only if "there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review de novo a decision granting summary judgment, " 'liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party.' " (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 705.) But although our review is de novo, we are " 'not obligate[d] . . . to cull the record for the benefit of the appellant[s] . . . in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant[s'] responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues . . . by citation to the record and any supporting authority.' " (*Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230.)

Although the Woodses' opening brief is almost 60 pages long, we need not address the vast majority of it to dispose of their contention that summary judgment was improperly granted. Initially, the Woodses argue at length that the trial court erred in sustaining some of the Simonse defendants' evidentiary objections. But in granting summary judgment, the court ruled that it would have reached the same decision even if it had considered the excluded evidence. We likewise conclude that our affirmance of the summary judgment would not change even if we were to assume that the evidence was admissible. As a result, we do not address whether the court's evidentiary rulings were correct.

In addition, most of the Woodses' arguments respond to points that the Simonse defendants raised in their motion for summary judgment but were not relied upon by the

3

trial court in granting it. The court's ruling was based on two conclusions: that the cause of action for conspiracy to defraud failed because there was no triable issue of material fact whether the Simonse defendants intended to aid in defrauding Chetcuti's investors and that the remaining causes of action failed because they depended on the existence of such a conspiracy. Because, as we explain below, the court's stated bases for granting summary judgment were correct, we need not reach the merits of the host of other issues the Woodses raise, including vicarious liability, alter ego and reverse piercing, and the statute of limitations.

2. The lack of evidence the Simonse defendants intended to aid in any tortious scheme defeats the Woodses' claims against them.

"The elements of an action for civil conspiracy are (1) formation and operation of the conspiracy and (2) damage resulting to plaintiffs (3) from a wrongful act done in furtherance of the common design." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1062.) "Standing alone, a conspiracy does no harm and engenders no tort liability," and "[i]t must be activated by the commission of an actual tort." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 511.) "The conspiring defendants must . . . have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose. [Citations.] [¶] However, actual knowledge of the planned tort, without more, is insufficient to serve as the basis for a conspiracy claim. Knowledge of the planned tort must be combined with intent to aid in its commission. . . . [¶] While knowledge and intent 'may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances' [citation], ' "[c]onspiracies cannot be established by suspicions. . . . Mere association does not make a conspiracy. There must be evidence of some participation or interest in the commission of the offense." ' " (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1582 (*Kidron*).)

Aside from making a few conclusory assertions, such as that "Chetcuti and Simonse entered into a plan" to defraud Chetcuti's investors and that the Simonse defendants "participated in the alleged conspiracy," the Woodses do not address in their

4

briefing the issue of intent. Instead, their arguments primarily involve only whether the Simonse defendants knew about Chetcuti's alleged Ponzi scheme. For example, the Woodses claim they demonstrated "a triable issue of material fact that [the] Simonse [defendants] were making loans to Chetcuti knowing full well they were sustaining Chetcuti and enabling him to continue with his Ponzi scheme." The evidence identified in support of this contention are documents, including various emails from Chetcuti to Simonse, indicating that Chetcuti was using the Magnate Fund #2 loan money to pay back his investors. But even assuming this evidence raises a triable issue whether the Simonse defendants *knew* the loans were being used for this purpose, it fails to suggest they *intended* "to join [Chetcuti] in . . . perpetration" of his alleged wrongdoing. (*Kidron*, *supra*, 40 Cal.App.4th at p. 1583.)

The Woodses also argue they "have . . . shown circumstantial evidence that Simonse was aware of, and participated in, Chetcuti's scheme," pointing to evidence that "Chetcuti and Simonse are friends," Simonse served as a vice president of one of Chetcuti's entities while Chetcuti was president, and the Simonse defendants were the only ones of Chetcuti's creditors to "end[] up with the securities for their loans." But evidence of Simonse's personal and professional relationship with Chetcuti does not raise a triable issue of material fact as to intent either: being friends or doing business with a party engaged in tortious activity, even with knowledge of that activity, is insufficient to raise an inference that one has a " 'common purpose' " to further that activity. (*Kidron*, *supra*, 40 Cal.App.4th at p. 1590.) In sum, the Woodses have failed to identify any evidence creating a triable issue whether the Simonse defendants intended to aid in any scheme to defraud Chetcuti's investors, and the trial court's ruling on the cause of action for conspiracy to defraud was therefore proper.

The lack of evidence of intent to aid in Chetcuti's fraud is also fatal to the Woodses' claim that the Simonse defendants intended to aid in inflicting emotional distress through perpetration of that fraud. The Woodses do not argue otherwise.

Finally, the Woodses claim the trial court erred in disposing of the cause of action for declaratory relief because it is "not superfluous" to the other causes of action but

5

"ask[s] for a determination on whose lien is superior . . . and . . . requests a cancellation of the trustee's deed" in the Woodward property.  But the basis for the court's ruling was that the Woodses' entitlement to declaratory relief depended on the existence of a conspiracy to defraud, not that declaratory relief was duplicative of other forms of relief sought.  The Woodses do not propose any theory under which they would be entitled to a declaration that they have a superior lien on the Woodward property without establishing wrongdoing by the Simonse defendants.  Accordingly, they have not shown that the court erred as to the declaratory-relief cause of action either.

B.      *The Woodses Fail to Establish that the Trial Court Erred in Denying Their Motion for Reconsideration.*

The Woodses also argue the trial court abused its discretion by denying their motion for reconsideration.  We are not persuaded.

The trial court explained its denial of the motion by stating that the Woodses "failed to satisfactorily explain why the evidence submitted in support of the motion for reconsideration could not have been submitted in opposition to the motion for summary judgment.  [Citations.]  Further, [they] . . . failed to support the motion . . . with competent evidence."  In a single sentence, the Woodses argue the court abused its discretion because the declarations they submitted in support of the motion for reconsideration "detailed why the evidence could not have been available earlier."  They cite no legal authority for their position, however, much less attempt to explain why the court's reasoning was unsound.  Because their claim of error is unsupported by "reasoned argument and citations to authority," we conclude they forfeited it and decline to consider it.  (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

III.
DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

6

_____
Humes, P.J.

We concur:


_____
Margulies, J.


_____
Banke, J.

7