Filed 6/22/23  Nagapetyan v. Farmers Insurance Exchange CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SARGIS SAM NAGAPETYAN,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>FARMERS INSURANCE EXCHANGE,<br><br>Defendant and Respondent. | B315282<br><br>(Los Angeles County Super. Ct. No. 20STCV41025) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara Ann Meiers, Judge.  Affirmed.

Beloryan & Manukyan, Haik A. Beloryan, and Vahe Shakhgeldyan for Plaintiff and Appellant.

Tharpe & Howell, William A. Brenner, Heather M. McKeon, and Eric B. Kunkel for Defendant and Respondent.

Plaintiff and appellant Sargis Nagapetyan (Nagapetyan) appeals the trial court's order granting summary judgment to defendant and respondent Farmers Insurance Exchange (Farmers) on his complaint alleging, in essence, that Farmers paid too little on his claim for over $16,000 in damages to his seven-year-old, pre-owned Mercedes SUV. We consider whether Nagapetyan's evidence (or the lack thereof) in opposition to summary judgment revealed there were triable issues of material fact as to whether Farmers fulfilled its obligations under the insurance policy.

## I. BACKGROUND

### A. *The Policy and the Loss*

Nagapetyan was a named insured on a Farmers car insurance policy covering the period from February 3, 2020, to August 3, 2020 (the Policy). One of the vehicles covered by the Policy was Nagapetyan's 2013 Mercedes Benz. The Policy covered "loss to [the] insured car, its additional equipment and any non-owned car caused by any direct, sudden and accidental means other than collision . . . ." It excluded loss for, among other things "wear and tear . . . ."

On April 17, 2020, Nagapetyan drove the Mercedes to work and parked in an outdoor parking lot. When he returned to his car after work, the driver's side window was broken and there was broken glass inside and outside of the vehicle. The only item missing from the car was a pair of Ray-Ban sunglasses.

Nagapetyan called the police, but no one was available to take a report. He placed a towel on the driver's seat and drove home. That night, Nagapetyan submitted a report online to the Los Angeles Police Department.

The next day, Nagapetyan submitted a claim for vandalism under the Policy and reported there was broken glass on the dashboard navigation, odometer, front seats, back seats, floors, and hand rest. He also reported there were scratches on the dashboard navigation, odometer, front seats, back seats, floors, and hand rest, including the panels and door handles.

A few days later, Nagapetyan submitted a proof of loss document to Farmers. Nagapetyan subsequently informed Farmers he was taking the car to V.I.P. Auto Body (VIP).

Farmers received an estimate from VIP totaling $16,208.27. The estimate, which attached photos of the car, included costs for replacing the broken window and damaged bezel trim on the driver's door, as well as costs for replacing interior components, including the trim, seats, console, navigation display, and steering wheel.

Farmers hired Sage Forensic Investigations to inspect the damage to the vehicle. Norm Lafave was assigned to the inspection. Lafave was provided with the VIP estimate and photographs. He then conducted an inspection of the car at VIP. Farmers received a written report of Lafave's analysis, which we will refer to as the Sage Report.

In May 2020, Farmers sent a letter to Nagapetyan partially denying his claim and estimating the total cost of covered damage to be $1,311.05. Farmers' estimate included replacing the broken glass, a mirror cover repair/refinish, painting and adding a clear coat to the driver's door shell, replacing the bezel trim on the driver's door, and parts and labor. After applying the $250 policy deductible, the net payment of policy benefits for damage to the car was $1,061.05. Farmers paid that amount to Nagapetyan on May 8, 2020. Farmers later issued a

supplemental payment of $515.84 for additional labor hours for the repairs.[1]

## B. *This Action*

Nagapetyan filed his complaint in October 2020. He alleged two causes of action against Farmers—breach of contract and breach of the implied covenant of good faith and fair dealing. In short, Nagapetyan alleged Farmers breached its obligations under the Policy by failing to pay his entire claim for damages and breached the implied covenant by denying him all the benefits it owed under the Policy and conducting investigations in an unreasonable manner.

### 1. *Farmers' motion for summary judgment*

Farmers moved for summary judgment, asserting two primary arguments. First, it argued Nagapetyan's breach of contract cause of action lacked merit because Farmers conducted a reasonable investigation and paid him the policy benefits reasonably owed. Second, Farmers argued Nagapetyan could not establish a breach of the implied covenant of good faith and fair dealing because no other policy benefits were in fact owed or, alternatively, because a genuine dispute existed as to Farmers' liability and bad faith does not exist where a failure to pay was reasonable.

In support of the motion, Farmers submitted, among other things, the VIP estimate of the cost to repair the car. The VIP

---

[1] Farmers also paid to replace the child car seats in Nagapetyan's car and paid for Nagapetyan's loss of use of his vehicle.

4

estimate included 60 line items of work that VIP asserted needed to be done, including replacing or reinstalling various parts. Among the over 20 parts to be replaced were four seat cushion covers, two seat back covers, the steering wheel, the center console compartment and armrest, a trim panel for the left front door, trim panel moulding for the left and right front doors, and the power window switch for the left front door. VIP's overall estimate included $3,343.15 in labor costs, $12,653.26 in part replacement costs, and $210.86 in additional costs.

Farmers also submitted the Sage Report in support of its summary judgment motion. The Sage Report's stated purpose was to "[i]nspect th[e] subject vehicle for glass damage into the interior of th[e] subject vehicle and if related to a broken left front window glass." It concluded most of the damage presented on the interior of the car was "pre-existing, manmade, with previous wear and tear, and not related to flying glass impact damage." The Sage Report recited that, when the investigation was conducted, broken pieces of glass were still in the vehicle and the vehicle had yellow markups "indicating the glass damage alleged from this incident." It concluded the markups "were not from glass damage" but from normal wear and tear, and represented that many of the marked areas wiped clean and revealed no damage at all.

The Sage Report specifically analyzed and discussed the areas of the car that bore the aforementioned yellow markups. For example, the report concluded damage on the right front door panel was "not from glass contacts, but from abrasions and light scratches." The right front seat had "normal wear and tear only, and no flying glass damage was present." Scratches on the driver's door sill were "preexisting before this loss" because the

5

area was protected by the door when closed and the marks had an incorrect bias for glass damage. Damage to the bezel trim on the inside of the driver's side door, however, was possibly consistent with glass abrading.

In connection with its summary judgment motion, Farmers also submitted a declaration from Brian Kiesel, a Field Claims Supervisor for Farmers, which asserted, among other things, that Farmers believed Lafave was qualified to examine and analyze Nagapetyan's car; that his analysis and conclusions were thorough, unbiased, and persuasive; and that Farmers relied on the report in good faith to determine an appropriate response to Nagapetyan's claim.[2]

### 2. *Nagapetyan's summary judgment opposition*

Nagapetyan argued triable issues existed as to his breach of contract cause of action because Farmers could not prove the damages to the interior of the car were pre-existing wear and tear, Farmers' belated partial payment did not extinguish his claim, and Farmers did not pay the true value of his claim. Nagapetyan took issue with the methods Lafave employed in generating the Sage Report and argued the report was insufficient because it failed to consider vandalism-related damage other than glass damage. Nagapetyan further asserted

---

[2] Farmers' summary judgment paperwork also included a copy of the letter it sent to Nagapetyan partially denying his claim. The letter represented that Sage Investigation concluded the cause of the damage to the interior components of the car was "wear and tear and man-made induced damages not related to glass breaking into the vehicle or vandalism of the vehicle."

6

he could prove the seat cushions did not have preexisting wear and tear damage because they were replaced in February and May 2017 (roughly three years before the window breaking incident).

Nagapetyan's evidence in opposition to summary judgment included various items of documentary evidence, and declarations from himself, his attorney, and Chris Serobyan, the president of VIP. Among that evidence were excerpts from the rough draft of claim supervisor Kiesel's deposition transcript.

Serobyan's declaration explained Nagapetyan's vehicle sustained damages to both its exterior and interior, including the driver's door, driver's door window, wood trim bezel on the driver's door, vehicle seats, cushions, dashboard, steering wheel, radio/navigation unit and center display, and front dash trim, among other interior components. VIP submitted the estimate to Farmers, and Farmers sent a third-party inspector to visually inspect the car and take photographs of it. The inspector did not perform any testing. Serobyan's declaration did not express an opinion or form any conclusions regarding whether the cited damages were pre-existing or caused by the recent vehicle break-in.

Nagapetyan also submitted his own declaration. He declared he purchased the car as a certified, pre-owned vehicle in January 2017. He had the car serviced on three different dates in April and May 2017, during which the front and rear seat cushions were replaced. On April 17, 2020, Nagapetyan parked his car behind his office building. When he left work that evening, he discovered his driver's window was broken and there was shattered glass inside and outside the vehicle. Nagapetyan called the non-emergency police line, but there was no answer.

7

Nagapetyan opened the driver's door, and more shattered glass fell inside the vehicle. Nagapetyan observed glass on the front and back seats of the vehicle. He retrieved a towel from the trunk of his car, placed it on the driver's seat, and drove home.

Nagapetyan's declaration did not aver, under penalty of perjury, that all of scratches and other damage cited in the VIP estimate did not pre-date the vehicle break-in. Instead, the declaration only recounted elements of non-sworn communications he had with a Farmers employee in which he told the employee there was no prior damage to the car.

In opposing summary judgment, Nagapetyan also asserted evidentiary objections. In particular, he objected to the Sage Report, arguing it lacked foundation, was an inappropriate expert opinion, and was hearsay.

### 3. *Farmers' reply*

Farmers submitted a reply brief, along with objections to some of Nagapetyan's evidence. Farmers also submitted excerpts from claim supervisor Kiesel's deposition, during which he testified Farmers asked its engineer "to look at the damages and determine if it was caused by the glass, particularly in this case, glass laying in the console the way that it is or in the act of a vandalism. [¶] So they look at those aspects. They know that somebody broke into the vehicle, and they look at whether or not they feel that this could have been caused as a result of that."

### 4. *The trial court's ruling*

The trial court granted the motion for summary judgment. As to the second cause of action for bad faith, the court found Farmers established it acted in good faith by properly

investigating Nagapetyan's claim, including by hiring an expert to evaluate the vehicle and relying on the information the expert provided. The court concluded the Sage Report was admissible as to Farmers' state of mind and overruled Nagapetyan's hearsay and other objections. The court concluded Farmers made an adequate showing in support of its contentions and Nagapetyan did not demonstrate any disputed issue of material fact.

As to the first cause of action for breach of contract, the court found Farmers submitted sufficient evidence to demonstrate no reasonable juror could find Nagapetyan's assertions of material fact were true, thereby requiring him to demonstrate a reasonable trier of fact could find underlying facts in his favor. The court stated the only evidence in the record that might offset Farmers' evidence was the VIP estimate and Nagapetyan's statement in his declaration asserting he told a Farmers employee there was no prior damage to his car. The trial court took issue with the latter because it was not a statement of the facts under oath, did not provide specific details, and did not specify what "damage" meant. It concluded the fact that Nagapetyan made the statement to the employee was proof of nothing, and therefore not enough to meet his burden. As for the VIP estimate, it did not satisfy Nagapetyan's burden because it did not identify any points of alleged harm or damage. Rather, it simply listed items to be replaced. In reaching its decision, the court also stated Nagapetyan had not attempted to provide an explanation supporting his case, or hired an expert to do so.

## II. DISCUSSION

Our review of the record reveals there are no triable issues of material fact as to Nagapetyan's breach of contract cause of

9

action. Farmers met its initial burden on summary judgment by proffering the opinion of its expert that none of the damage Farmers declined to cover was attributable to the break-in. It was then Nagapetyan's burden to put forth evidence to the contrary. Because he did not do so, summary disposition of the claim was proper. As Nagapetyan has no breach of contract claim as a matter of law, his claim for breach of the implied covenant also necessarily fails, and summary judgment was proper.

> A. *Summary Judgment and the Standard of Review*

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) "Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable issue of one or more material facts exists as to that cause of action . . . ." (Code Civ. Proc., § 437c, subd. (p)(1); *Aguilar, supra,* at 850.) A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar, supra,* at 850.) "We review the trial court's decision de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party.' [Citation.]" (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 705.)

### B. *Nagapetyan Did Not Adduce Evidence Establishing a Triable Issue of Material Fact*

If an insurer seeks summary judgment on the ground that a claim is excluded, and thus the relevant policy was not breached, "'it has "the burden . . . to prove that the claim falls within an exclusion. [Citation.]" [Citation.] To satisfy its burden, an insurer need not "disprove every possible cause of the loss" and once the insurer establishes the claim is excluded, the burden shifts to the insured to show a triable issue of material fact exists.' [Citation.] "'[A]n insured has the burden of proving its claim falls within the scope of the policy's basic coverage, even where the insurer brings a motion for summary judgment." [Citation.]' [Citation.] 'Thus, when an insurer meets its initial burden on summary judgment of showing there is no coverage under the policy, the burden shifts to the insured to show a triable issue of material fact as to coverage.' [Citation.]" (*Mosley v. Pacific Specialty Ins. Co.* (2020) 49 Cal.App.5th 417, 423.)

As pertinent here, the Policy (1) covered a loss caused by any direct, sudden, and accidental means other than collision and (2) excluded losses due to wear and tear. Farmers moved for summary judgment (or adjudication) on the ground that it paid the portion of Nagapetyan's claim covered by the Policy and the remainder of the claim was excluded. Farmers' evidence, namely the Sage Report, concluded "[a]ll the damage presented on the interior of this subject vehicle was pre-existing, manmade, with previous wear and tear, and not related to flying glass impact damage." This satisfied Farmer's initial burden. Nagapetyan does not argue otherwise.

Liberally construing the evidence that Nagapetyan submitted, there is nothing that materially contradicts Farmers'

11

evidence demonstrating it did not breach the insurance policy. Most significantly, Nagapetyan did not establish the repair items in the VIP estimate were all for damage that did not exist prior to the break-in. Indeed, Nagapetyan's declaration made no affirmative assertions about the prior state of the car. The best that can be said for the evidence on this point is that Nagapetyan's declaration recounted an unsworn statement he made to a Farmers employee there was no prior damage to the car.[3] While an opposition to a summary judgment motion may be supported by declarations (Code Civ. Proc., § 437c, subd. (b)(2)), the statements in a declaration must be asserted to be true under penalty of perjury (Code Civ. Proc., § 2015.5). Because Nagapetyan's declaration does not assert the status of the car prior to the break-in under penalty of perjury, it does not establish the fact of the car's status. (See *Truslow v. Woodruff* (1967) 252 Cal.App.2d 158, 163-164 [summary judgment correctly granted because unsworn memorandum signed by counsel insufficient to deny facts set forth by movant].) Nor did Nagapetyan submit photographs or any other evidence to establish the prior state of the car.[4]

---

[3]     We make our assessment without regard to the proof of loss form in the record that Nagapetyan did not rely on in his separate statement filed with his opposition to summary judgment, nor in his brief filed in this court. While that form has "none" typed in a field to list "prior damage," the form is incomplete because it is not notarized and does not bear the signature of a company representative.

[4]     Nagapetyan did declare that his vehicle's seat cushions were replaced in 2017, approximately three years prior to the break-in. While this indicates the status of those seats after their

In addition, Nagapetyan provided no other evidence a jury could properly rely on to find the damage Farmers declined to cover was not pre-existing and therefore, by inference, caused by the break-in. There was no expert declaration or other evidence establishing a causal link between any damage and the incident. Serobyan's declaration also did not opine as to the cause of any of the long list of items the VIP estimate proposed to repair. Summary judgment on the breach of contract claim was thus proper.

Nagapetyan nonetheless believes he successfully opposed summary judgment because his statement in his declaration that he told a Farmers employee there was no prior damage to the car permits the "obvious" inference that he would testify to the same fact at trial. He also asserts the VIP estimate permits an inference that the listed items needed to be repaired or replaced due to damage from the vandalism. He is wrong on both counts. It is not reasonable to infer Nagapetyan would make a statement under oath at trial that he conspicuously did not make in his written declaration. Nor is it reasonable to infer that all the damage listed in the VIP estimate was caused by the break-in when VIP did not so opine (and was not in a position to so opine).[5]

---

replacement, it does not constitute evidence of their status directly prior to the break-in.

[5] Indeed, some of the items on the VIP estimate did not reflect damage at all, whatever the cause. The Sage Report states that some of the identified damage that VIP proposed to fix in fact wiped clean when inspected; Nagapetyan introduced no evidence to contradict this.

Nagapetyan also contends the Sage Report was insufficient for a handful of reasons, including that it was limited to assessing only the damage from flying glass rather than other damage from the vandalism, was conclusory, and was biased due to Sage's working relationship with Farmers.[6] We conclude, as the trial court did, that the report was sufficient to establish the unpaid portion of Nagapetyan's claim was not covered by the policy. In particular, we note that in addition to concluding damage to the interior of the car had not been caused by flying glass, the Sage Report concluded the damage to the interior of the car was "pre-existing, manmade, with previous wear and tear." Further, Nagapetyan did not put forth any evidence undermining the Sage Report's conclusions. Finally, Nagapetyan's argument that the Sage investigation was biased is unsupported by admissible evidence. The only evidence Nagapteyan cites in support of this contention are the excerpts from the rough draft of Keisel's deposition. The rough draft of a deposition transcript, however, "may not be used, cited, or transcribed as the certified transcript of the deposition proceedings."[7] (Code Civ. Proc., § 2025.540.)

---

[6] To the extent Nagapetyan attempts to assert the Sage Report should not have been considered at all, that argument was forfeited by his failure to challenge the trial court's ruling on his objection. Contrary to Farmers' contention, however, Nagapetyan's failure to preserve his objection to the Sage Report's admissibility does not prevent him from challenging its significance.

[7] Nagapetyan also challenges certain statements the trial court made in reaching its ruling. Because we are concerned

14

Because no trial is needed to determine no additional benefits were due under the insurance policy, Farmers also did not breach the implied covenant of good faith and fair dealing. (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 [where no benefits are due to an insured, there is no claim for breach of the implied covenant]; see also *Minich v. Allstate Ins. Co.* (2011) 193 Cal.App.4th 477, 493 [where insurer granted judgment as a matter of law on breach of contract claim, bad faith claim also fails]; *Everett v. State Farm General Ins. Co.* (2008) 162 Cal.App.4th 649, 663 ["[b]ecause there was no breach of contract, there was no breach of the implied covenant"].) Summary adjudication of Nagapetyan's implied covenant claim was therefore also correct.

---

with the trial court's ultimate ruling and not its reasoning, we do not address those arguments.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to Farmers.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:


RUBIN, P. J.


MOOR, J.